273 N.W.2d 134 (1978)
In the Matter of N. J. W., N. G. B., and K. F. B., alleged Dependent and Neglected Children.
No. 12379-a-REM.
Supreme Court of South Dakota.
Argued October 17, 1978.
Decided December 28, 1978.
*136 Janice C. Godtland, Asst. Atty. Gen., Pierre, for respondent, State of South Dakota; William J. Janklow, Atty. Gen., Pierre, on brief.
James L. Iosty, Thomas C. Barnett, Jr., Ft. Thompson, and Anita Remerowski, Mission South Dakota Legal Aid Service, for appellant parents.
MORGAN, Justice.
This is an appeal from an order of the Circuit Court for the Fourth Judicial Circuit adjudging appellants' three children, N.J.W., N.G.B., and K.F.B., to be dependent and neglected and terminating appellants' parental rights. Appellants question the constitutionality of certain statutes, allege violations of due process rights, and allege various evidentiary errors. We affirm.
In 1973, a proceeding was held in the county court for Davison County, Fourth Judicial Circuit, on a petition alleging dependency and neglect of the children, under SDCL 26-8-6, and seeking termination of appellants' parental rights. In January of 1974, the trial judge ruled that the children were not dependent or neglected and dismissed the petition.[1]
On August 3, 1974, the children were again taken into custody by the Service Administration of the South Dakota Department of Public Welfare (Service Administration), and on August 15, 1974, pursuant to petitions requesting temporary custody and an adjudication of dependency or neglect, the court, with a different judge presiding, granted ninety days temporary custody to the Services Administration. On December 2, 1974, pursuant to similar petitions, the court granted an additional ninety days temporary custody.
On March 4, 1975, a hearing was held on various motions by appellants. Certain of those motions which were denied are before us on this appeal.
An adjudicatory hearing was held on May 28 and 29, 1975, and on June 18, 1975, the court entered findings of fact and conclusions of law determining that the children were dependent and neglected. A dispositional hearing followed on July 22, 1975, and, without issuing any findings of fact or conclusions of law from that hearing, the court terminated appellants' parental rights in the children. Appellants appealed the decision and in May, 1977, this Court vacated the county court's order terminating appellants' parental rights because of the court's failure to issue findings of fact and conclusions of law. We remanded the case and, because of the lapse of time between the July, 1975, hearing and the May, 1977, disposition, we directed the lower court to hold a new dispositional hearing, enter findings of fact and conclusions of law and issue a new order based thereon. All other points appealed were reserved. Matter of N. J. W., S.D., 253 N.W.2d 333 (1977).
In accordance with our mandate, a new dispositional hearing was held on June 27, 1977. On August 11, 1977, the court entered findings of fact and conclusions of law along with an order terminating appellants' parental rights. That order and the order of adjudication are the subject of this appeal.
*137 It is important to bear in mind that parents, natural or adoptive, have a fundamental right to their children. However, it is not an absolute or unconditional right. The State, as parens patriae, takes a necessarily strong interest in the care and treatment of every child within its borders. In re K. D. E., 87 S.D. 501, 210 N.W.2d 907 (1973); Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944).
We first examine appellants' contention that SDCL 26-8-6, the statute under which the children were found to be dependent and neglected, is unconstitutionally vague. We find that it is not. This Court has previously upheld the constitutionality of this statute in light of allegations that it is "vague and indefinite". Matter of D. T., S.D., 237 N.W.2d 166 (1975). See also People in Interest of D. K., S.D., 245 N.W.2d 644 (1976). We find those decisions to be sound and well reasoned and we reject appellants' attempt to distinguish the present case.
Appellants contend secondly that they were denied their rights to due process prior to the adjudicatory hearing. Their contention is based upon the fact that they were not notified of the August 15, 1975, temporary custody hearing and were only notified a few hours in advance of the December 2, 1975, temporary custody hearing. They contend that they were precluded from preparing and presenting any kind of defense or from having a reasonable opportunity to resist the Service Administration's efforts to obtain temporary custody.
While we agree with appellants that proper notice was not given and we disapprove of the court's failure to afford proper notice, appellants fail to show any prejudice to their rights with respect to the final adjudication of dependency and neglect or the termination of parental rights. We are not in a position to reverse the awards of temporary custody since they are no longer in effect and absent a showing of prejudice, appellants' contention fails.[2]
Appellants next contend that the court erred in admitting evidence and testimony at the adjudicatory hearing pertaining to periods of time before January 11, 1974. That is the date of the 1974 ruling. Appellants contend that the 1974 ruling was final as to the determination of dependency and neglect at that time and that the doctrines of res judicata and collateral estoppel should preclude the court from taking any evidence or testimony pertaining to any time period prior to the issuance of that order. We find appellants' contention to be correct and hold that the doctrine of res judicata is applicable here.
The principle of res judicata was clearly stated in Carr v. Preslar, 73 S.D. 610, 47 N.W.2d 497 (1951), wherein this Court quoted from Keith v. Willers Truck Service, 64 S.D. 274, 266 N.W. 256 (1936):
`First, a final judgment or decree of a court of competent jurisdiction upon the merits is a bar to any future action between the same parties or their privies upon the same cause of action so long as it remains unreversed; and, second, a point which was actually and directly in issue in a former action and was there judicially passed upon and determined by a domestic court of competent jurisdiction cannot be drawn in question in any future action between the same parties or their privies whether the cause of action in the two actions be identical or different.. . .' (47 N.W.2d at 500)
The court defined a party's cause of action as "the facts which establish or give rise to the right of action a party seeks to enforce." Carr v. Preslar, supra, at 500. This principle provides our system of justice with a necessary elementfinality. It is necessary to prevent continuous and repeated *138 litigation over a dispute. The principle is commonly used in divorce cases when a party is seeking a change of custody or support. The only matters which are relevant in such an instance are those which have occurred since the last determination of custody. Huckfeldt v. Huckfeldt, 82 S.D. 344, 146 N.W.2d 57, 59 (1966). The same principle would apply here. The 1974 ruling is res judicata under conditions existing at the time it was issued and only evidence and testimony pertaining to time periods after that date are relevant and admissible. See also People in Interest of D. K., supra.
Having determined that the evidence pertaining to time periods before January 11, 1974, was improperly admitted, we must determine whether such error was prejudicial to appellants. We point out that we are not in a position to decide the factual issues de novo. The findings of fact made by the lower court are binding upon this court unless we are satisfied that they are contrary to a clear preponderance of the competent evidence and are therefore "clearly erroneous." SDCL 15-6-52(a); Cunningham v. Yankton, P.A., S.D., 262 N.W.2d 508 (1978). We are unable to so find after a careful review of the record. Every finding is supported by competent evidence. It is true, as appellants contend, that the evidence admitted by the court pertaining to time periods before January 11, 1974, tend to support the findings and that there is indeed a significant amount of such evidence. However, each finding is sufficiently supported by admissible evidence so that we cannot say that any of said findings are clearly erroneous.[3] The improperly admitted evidence was cumulative only and where admissible evidence supports the findings, cumulative evidence, though inadmissible, is nonprejudicial. Alberts v. Mutual Service Casualty Insurance Co., 80 S.D. 303, 123 N.W.2d 96, 103 (1963); Matter of D. T., supra, at 171.
Appellants also contend that the court erred in admitting evidence at the adjudicatory hearing pertaining to time periods after August 13, 1974. Appellants argue that since they no longer had custody nor supervision of their children after that date, their actions are totally irrelevant to determining their fitness as parents. Further, they contend that the issue is whether the children were dependent or neglected at the date of the filing of the petition and thus, appellants' actions subsequent to that time are irrelevant. We cannot agree. The evidence presented as to occurrences after August 13, 1974, is relevant to the question of appellants' continuing behavior and attitudes. Furthermore, a reasonable inference is raised that appellants' present behavior is similar to past action and admission of such evidence is not error. Matter of D. T., supra, at 170. Certain of the findings related almost entirely to appellants' actions and habits and even though the children were not in their custody, the evidence can go to support a showing of a continuous pattern of life style extending back during their custody.[4] This Court, in Matter of D. T., supra, quotes from In Interest of Nelson, 216 Kan. 271, 531 P.2d 48 (1975) as follows:
`The trial in district court was a de novo hearing on the factual issues of the dependency and neglect of the children and appellant's fitness to have their custody and the ultimate issue of the best interests and welfare of the children. The questioned evidence was relevant to those issues and it was not rendered inadmissible because it related to events occurring after the filing of the petition initiating the proceedings.' (237 N.W.2d at 170)
Appellants next contend that the court erred in finding the children dependent and neglected at the adjudication hearing on a ground not alleged in the petition.
The petition alleged in pertinent part:

*139 That the said children are dependent or neglected children for the reason that their parents have failed to provide proper or necessary subsistance, medical care or other care necessary for the children's health, guidance, or well being . . . .
The trial court, in its second conclusion of law, to which the appellants object most strenuously, stated in pertinent part:
II.
That the children herein have not received proper parental care and that their environment is injurious to their welfare. (Emphasis added.)
Appellants argue that since the petition did not allege that the children were suffering from an environment injurious to their welfare, the court's conclusion to that effect was error. "Environment injurious to [their] welfare" is one of the five definitions of dependency or neglect contained in SDCL 26-8-6[5] and since it was not alleged in the petition, appellants argue that they were not put on notice that they should present a defense to that ground and that the court's conclusion was erroneous. We agree. Notice, to comply with due process requirements, must set forth the alleged misconduct with specificity and particularity. Application of Gault, 387 U.S. 1, 33-34, 87 S.Ct. 1428, 1446-47, 18 L.Ed.2d 527 (1967). See also SDCL 26-8-22.5 and 26-8-22.6. We hold this to mean that the grounds upon which the dependency or neglect is alleged are the only grounds which may be used to reach a determination of dependency or neglect. For the court to conclude that dependency or neglect was present on grounds other than those alleged is error and that conclusion must be deleted and cannot serve as grounds for an order of the court declaring dependency or neglect.
We do not agree, however, that because of the error the lower court's order declaring the children to be dependent and neglected must be vacated. Upon deleting the phrase "and that their environment is injurious to their welfare", there still remains in the court's conclusions of law sufficient valid conclusions to support the court's order. SDCL 26-8-6 provides that the grounds are alternative. Any one of the grounds alone would be sufficient to support an order declaring dependency or neglect. After deletion of the questioned phrase from the court's conclusions of law, there still remain conclusions relating to two of the grounds in SDCL 26-8-6. We hold that these conclusions are adequate to support the court's order.
Appellants next contend that the standard of proof in dependency and neglect cases, a preponderance of the evidence,[6] is unconstitutional and that the court erred in applying that standard. Appellants argue that where fundamental rights are concerned, a higher standard of proof is required, i. e. beyond a reasonable doubt. We strongly disagree. Dependency and neglect cases involve the often-conflicting rights of parents and of children. It *140 becomes necessary, in determining the proper standard of proof, to weigh the interests of both parent and child. We fully agree with the reasoning of the Arizona Court of Appeals in Hernandez v. State ex rel. Arizona Dept. of Econ. Sec., 23 Ariz.App. 32, 530 P.2d 389 (1975), where the Court stated:
In a termination proceeding an error in factual determination can result in the termination of the parental relationship when such termination is not justified. On the other hand it can result in the failure to terminate when the relationship should be ended. The standard of proof is going to affect the relative frequency of those two erroneous outcomes. [A higher standard of proof] would result in a greater risk than (sic) parental rights would be erroneously severed, but a smaller risk than (sic) a child, as a result of a factual error, would be forced to return to a hostile, if not dangerous, family situation or spend his childhood in a series of temporary foster homes. Comparing the social disutility of these two erroneous outcomes, we do not believe that one can make a fundamental value determination that the erroneous severance of parental rights, vis-a-vis the erroneous failure to sever, constitutionally requires a higher burden of proof. (530 P.2d at 393)
This is not a situation, as in a criminal case, where the conflict is between an individual and the state. In such a case, the rights of the individual are paramount to those of the state and an extremely high standard of proof, i. e. beyond a reasonable doubt, is indeed proper and required. However, in the case before us, the conflict is essentially between the rights of the parents and those of the children. In this situation, the application of a balancing test is eminently logical and necessarily fair. Therefore, the preponderance of the evidence standard is proper and constitutional.
Finally, appellants contend that the court erred in terminating appellants' parental rights because termination was not the least restrictive alternative available.
The principle which is often loosely referred to as the "least restrictive alternative" principle is stated in Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960):
In a series of decisions this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. (364 U.S. at 488, 81 S.Ct. at 252.)
We must determine whether the court erred in concluding, based on the findings of fact resulting from the dispositional hearing, that there was available no narrower or less restrictive means of providing for the best interests and welfare of the children than to terminate appellants' parental rights. The court made a finding that appellants have resisted attempts to provide assistance for their problem and, in examining the record, we find this finding of fact to be clearly supported by ample evidence. Therefore, albeit reluctantly, we cannot disagree with the court's conclusion that termination of parental rights is the only solution to insure that the state's compelling interest in the safety, well-being and welfare of the children is effectuated. As a result, we hold that the court did not err in terminating appellants' parental rights.
Appellants seek to lay the blame for the children's condition onto poverty and an alien culture rather than neglect. We would be blind to reality if we did not recognize that excessive consumption of alcohol is a problem of an alien culture to many ethnic groups, including native Americans, seeking to conform cultural values of the past to the stress of modern living. Just as many others turn to alcohol to find relief from the struggle, so do native Americans. The poverty and neglect that flow from dissoluteness and profligacy are common to all races and demand action to protect the innocent "victims. The children involved here are not second-class citizens who are entitled to less protection than their non-Indian neighbors. Were this simply *141 a matter between the state and appellants, their argument would be more persuasive, but since this action focuses primarily on the welfare of the children their argument fails. We have examined and considered this argument and appellants' remaining contentions and find them to be without merit.
We affirm the order of the lower court adjudging N.J.W., N.G.B., and K.F.B. to be dependent and neglected children and terminating appellants' parental rights.
All the Justices concur.
NOTES
[1] This ruling will later be referred to as the 1974 ruling.
[2] Appellants cite In re D. L. F., 85 S.D. 44, 176 N.W.2d 486 (1970) to support their contention. We would point out, however, that the order appealed from in that case resulted from the hearing for which the appellant did not receive proper notice. The circumstances here are dissimilar. There is no contention here that the parents received improper notice of either the adjudicatory or dispositional hearing, only the temporary custody hearings.
[3] When an action is tried to the Court, the presumption is that improperly admitted testimony is disregarded. Sulzbach et al. v. Town of Jefferson, 83 S.D. 156, 155 N.W.2d 921 (1968).
[4] We would note, parenthetically, that it is just as possible for information concerning behavior and attitudes after the filing of the petition to work in favor of the parents as against them.
[5] SDCL 26-8-6 provides:

In this chapter unless the context otherwise plainly requires "neglected or dependent child" means a child:
(1) Whose parent, guardian, or custodian has abandoned him or has subjected him to mistreatment or abuse;
(2) Who lacks proper parental care through the actions or omissions of the parent, guardian, or custodian;
(3) Whose environment is injurious to his welfare;
(4) Whose parent, guardian, or custodian fails or refuses to provide proper or necessary subsistence, education, medical care or any other care necessary for his health, guidance, or well-being; or
(5) Who is homeless, without proper care, or not domiciled with his parent, guardian, or custodian through no fault of his parent, guardian or custodian.
Provided however, notwithstanding any other provision of this chapter, no child who in good faith is under treatment solely by spiritual means through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall, for that reason alone, be considered to have been neglected within the purview of this chapter.
[6] See SDCL 26-8-22.5.