283 N.W.2d 554 (1979)
In the Matter of C. E. and D. E., Alleged Neglected and Dependent Children.
Nos. 12430, 12481.
Supreme Court of South Dakota.
September 26, 1979.
James W. Olson, Armour, for appellant, Mother of C. E. and D. E.
B. Elizabeth Godtland Ganje, Asst. Atty. Gen., Pierre, William J. Janklow, Atty. Gen., Janice Godtland, Asst. Atty. Gen., Pierre, on brief, for respondent State of South Dakota.
Lee D. Anderson, Mitchell, for children.
WOLLMAN, Chief Justice.
These two appeals are from the adjudicatory and the dispositional hearings in which C.E. and D.E. were adjudged to be neglected and dependent children and appellant's parental rights were terminated. We affirm.
On the evening of October 13, 1977, a report was made to the Mitchell Police Department concerning a disturbance at appellant's apartment. This was apparently not an unusual occurrence. The police officers contacted the Department of Social Services (Department) because they believed something had to be done with the *555 children. Ms. Diane Cogley, a Department social worker, responded to the call. She then proceeded to contact Charles Ibis, a Court Service officer, and Deputy Sheriff Kirkus. These gentlemen were called to observe and to take pictures. Upon entering the apartment Ms. Cogley observed that the apartment was in a state of serious disarray and was "very filthy." C.E.'s diapers were very wet and soiled. D.E., who at the time was three months old, was also very dirty and soiled. There was evidence in the apartment that some persons had been sniffing paint. Several adults were in the apartment, and it appeared to the witnesses that someone had been fighting. Two of the men present had traces of blood on their faces and bodies. Appellant was lying on the bed, apparently unconscious (she later acknowledged that she had "passed out" from drinking). Ms. Cogley removed C.E. and D.E. from the apartment at that time. Later that evening the police were again called to the apartment, this time to investigate an incident in which one of the males who had been present earlier in the evening had been stabbed.
The next day Ms. Cogley returned to the apartment and upon learning that the mother wished the children returned, set out the following conditions for their return: (1) That the apartment be given a thorough cleaning; (2) that groceries for the children be purchased; (3) that appellant be on good behavior for one month. On October 18, 1977, the children were returned to appellant.
Ms. Cogley made no further contact with the family until October 25, 1977, when the Mitchell police received a report of another disturbance at the apartment. The police again called Ms. Cogley, and she proceeded with the Deputy Sheriff to the apartment to remove the children. The witnesses testified that upon arriving at the apartment they found appellant, along with her sister and others, sitting on the front steps of the apartment building, apparently intoxicated. C.E. was found at his grandparents' apartment across the hall from appellant's apartment, and D.E. was heard "screaming her lungs out" in the apartment. Upon entering the apartment, Ms. Cogley found D.E. alone on a filthy bed. There was a "foul, putrid odor" in the apartment. The odor was so oppressive it caused the witnesses to become nauseated. The children were very dirty and soiled. C.E. was found to have sores covering his face and limbs. The witnesses were unable to find any clean clothing for the children, and finally a blanket covered with feces was found to wrap the infant in for a trip to the hospital.
The apartment contained a minimal amount of food suitable for young children, along with several empty wine bottles. The emergency room nurse testified that she observed nothing unusual about the children except that they were very dirty and wet and that their bodies reeked of urine. The nurse testified that she felt that C.E. was "listless and lethargic." She called a doctor concerning C.E.'s sores and applied the ointment prescribed. The children were then taken to separate foster homes, where they remained until the adjudicatory hearing.
The social history and home study investigation of this family reveals that this family's problems have been widespread and long-standing. Appellant has previously had four children removed from her custody by the state. Appellant blames her current problems on four male acquaintances who apparently frequent appellant's apartment and "fight, argue and drink liquor."
Appellant contends that because the police officers, the social worker, and others entered the apartment on October 25, 1977, without a search warrant and without appellant's permission they should not have been allowed to testify concerning what they saw in the apartment. SDCL 26-8-19.1(2) allows a law enforcement officer to take a child into temporary custody without a court order when the child is abandoned or is seriously endangered in its surroundings and immediate removal appears to be necessary for its protection. The Supreme Court of Minnesota held that a statute similar to SDCL 26-8-19.1(2) allowed police officers to make a forcible entry to retake *556 physical custody of a child who had been returned to the custody of its mother. In Re Welfare of Scalzo, 300 Minn. 548, 220 N.W.2d 495 (1974). The court concluded that the officers had entered with a reasonable belief that the child's health or welfare was endangered and that any observations made by the officers fell within the plain view exception to the search warrant requirement. We believe that the same analysis applies in the instant case. Once Ms. Cogley and the officers arrived at the scene they were confronted with circumstances that gave them reasonable grounds to believe that at least one of the children was seriously endangered in its surroundings. It would not have been reasonable to require them to leave the apartment to secure a search warrant with the sound of D.E.'s screams ringing in their ears. Thus, our holding in State v. Stip, 246 N.W.2d 897 (S.D.1976), is not apposite here. That case involved a routine inspection that could have been accomplished as easily one day as the next, hardly the situation here.
Appellant contends that the trial court erred in finding the children neglected and dependent because the evidence failed to prove that the children lacked proper care or that their environment was injurious to their welfare. Appellant also argues that the evidence introduced at trial is evidence of poverty and is not evidence of the mother's neglect of the children.
Under SDCL 26-8-22.5, the state is required to prove by a preponderance of the evidence the allegations set forth in the petition. The trial court determined that the state had met its burden. We conclude that the evidence presented by the state supports the trial court's ruling. The record is replete with examples of parental neglect and filthy living conditions, as well as the unwholesome and dangerous home situation that was the frequent object of police calls to quell drunken shouting and fighting brawls in the home.
Appellant next argues that the trial court erred by admitting into evidence testimony relating to the stabbing incident that occurred the evening of October 25 after C.E. and D.E. had been removed from the home.
We addressed a similar contention in In re N. J. W., 273 N.W.2d 134 (S.D.1978). We stated there that evidence presented regarding occurrences after the removal of the children was "relevant to the question of [the parents'] continuing behavior and attitudes. Furthermore, a reasonable inference is raised that [the parents'] present behavior is similar to past action and admission of such evidence is not error." 273 N.W.2d at 138 (citation omitted).
The findings of the trial court in the case at bar relate to appellant's actions and habits. As we said in the N. J. W. case, supra, "even though the children were not in [the parents'] custody, the evidence can go to support a showing of a continuous pattern of life style extending back during their custody." 273 N.W.2d at 138.
Appellant also argues that the preponderance of the evidence standard of proof applied by the trial court is insufficient when a person is being deprived of a fundamental constitutional right. This matter was also addressed in the N. J. W. case, supra, wherein we held preponderance of the evidence to be the proper standard in South Dakota.
Finally, appellant argues that a less restrictive alternative than termination of parental rights should have been imposed. As was the case in N. J. W., supra, the trial court was faced with a situation in which attempts to assist a parent in providing more adequate care for her children were unavailing. We conclude that the trial court did not err in ruling that the best interests of the children mandated the termination of appellant's parental rights.
The orders appealed from are affirmed.
All the Justices concur.