356 N.W.2d 476 (1984)
The PEOPLE of the State of South Dakota, In the Interest of C.L. and B.R. and Concerning T.L., Mother; K.C., Father.
No. 14471.
Supreme Court of South Dakota.
Considered on Briefs September 11, 1984.
Decided October 17, 1984.
*477 Janice Godtland, Asst. Atty. Gen., Pierre, for appellee State of S.D.; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.
Gerald M. Baldwin of Baldwin & Kelley, Custer, for appellant mother.
Todd D. Hauge, Custer, for children C.L. and B.R.
Kenneth R. Dewell, Hot Springs, for father D.R.
Pamela Putnam, Hot Springs, for intervenors J.J. and C.J.
MORGAN, Justice.
T.L., the mother in this case, appeals from a dispositional order dated December 9, 1983, which terminated her parental rights over C.L. and B.R. We affirm the order.
On March 30 or 31, 1982, C.L. and B.R. were removed from T.L.'s home and taken into the custody of the South Dakota Department of Social Services (Social Services). On March 26, 1982, the youngest child, C.L., had been brought to the hospital comatose and with an irregular breathing pattern. The hospital staff suspected that both children had been physically abused and reported the family to Social Services.
Social Services caseworker, Craig Black (Black) placed B.R. in emergency foster care and C.L. was taken to the Rapid City Regional Hospital intensive care unit. The sheriff's department interviewed T.L. and her live-in boyfriend, T.W., and elicited admissions which indicated that they both had physically abused the children on different occasions. T.L. and T.W. were arrested and jailed in Hot Springs on March 29, 1982. On September 16, 1982, T.W. pled guilty to a child abuse charge and was sentenced to two years in the state penitentiary. On October 21, 1982, T.L. pled guilty to a child abuse charge and was sentenced to two years in the women's correctional facility. She began serving her term in Yankton on December 2, 1982.
On December 1, 1982, the children were found to be dependent and neglected, pursuant to SDCL ch. 26-8. C.L. is blind, *478 crippled and brain damaged as a result of the injuries inflicted by T.W. as T.L. stood by and watched him bang C.L.'s head against a wall and place the child in a hot shower. C.L. was hospitalized until May of 1982 and was then placed in a foster home. T.L. had three visits of forty-five minutes each with C.L. in the summer of 1982 prior to beginning service of her sentence in Yankton. C.L.'s foster mother, who was present during the visits, testified that T.L. spent the time tossing C.L. into the air, which the child did not like. T.L. did not ask about the child's condition and apparently had no knowledge or perception of the extent of his injuries. The foster mother perceived that T.L. had the idea that C.L. was sick and would get well. The foster mother also testified that T.L. was nervous and impatient with C.L. and did not know what to do with him. C.L. remains a ward of Social Services and receives intensive therapy and special foster care.
Between March and April of 1982, B.R. was placed in four foster homes in one month. In April, he was placed with John and Cheryl Jarding. B.R. exhibited a fear of adult males, a fear of the shower and a fear of hot water. The child was afraid to be in the bathtub by himself for the first six months he was with the Jardings. To overcome this fear, the Jardings put him in the bathtub with their own child. B.R. did not talk for the first month he spent with the Jardings; he finally began to unfold at the end of May. Visits between T.L. and B.R. were strained. The child would not be left alone with her. B.R. did not like the visits with his mother and had to be repeatedly coaxed before he would leave the social worker's lap and sit alone and interact with his mother.
T.L. raises three issues on this appeal. First, she contends that violations of her constitutional and statutory rights require reversal of the trial court's decision. There are three parts to this issue: (1) That T.L.'s constitutional right to a lesser restrictive alternative than termination of parental rights was violated; (2) that the trial court placed undue reliance on improper and incompetent evidence and thus precluded a decision based on the evidence, and (3) that the trial court did not meet the statutory requirements of SDCL 26-8-35.2. Second, T.L. complains that her parental rights were wrongfully terminated while she was incarcerated and unable to improve her parenting skills. Third, T.L. asserts that the evidence presented was insufficient to support the trial court's finding that her parental rights should be terminated.
Witnesses for State testified that termination of T.L.'s parental rights was the least restrictive alternative. Social workers Craig Black, Virginia Sage, and Tina Anderson each testified that in their opinion T.L. could not properly care for the children.
SDCL 26-8-36 provides, in part, that the trial court may terminate "all parental rights ... when it finds that the best interests and welfare of the child so require." The trial court must find by "clear and convincing evidence that termination of parental rights is in the best interest of the child." Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Matter of S.L., 349 N.W.2d 428 (S.D.1984); People in Interest of S.H., 323 N.W.2d 851 (S.D.1982). The right to have children does not encompass a right to abuse them by omission or commission. Matter of D.H., 354 N.W.2d 185 (S.D.1984); Matter of L.M.T., 305 N.W.2d 399 (S.D.1981); Matter of V.D.D., 278 N.W.2d 194 (S.D.1979). Parental rights must give way to the child's best interest. D.H., supra; Matter of C.E., 283 N.W.2d 554 (S.D.1979); People in Interest of D.K., 245 N.W.2d 644 (S.D.1976).
Termination of parental rights is not conditioned on exhaustion of every possible form of assistance. D.H., supra; Matter of R.Z.F., 284 N.W.2d 879 (S.D.1979); C.E., supra; Matter of N.J.W., N.G.B., and K.F.B., 273 N.W.2d 134 (S.D.1978). Completion of parenting programs offered at the women's correctional facility were a part of the case plan worked out and agreed to by T.L. and Black. Black *479 informed T.L. that the return of her children was contingent upon completion of the case plan. T.L. admitted at trial that she did not complete the case plan. In the absence of a showing that her parenting skills have improved, which T.L. has not demonstrated, she suggests as an alternative that legal custody in Social Services should be extended but that she should be allowed the opportunity upon release to have physical custody and thereby prove that her parenting skills have improved and that she can provide the care and nurturing required. Basically, T.L. suggests that as a lesser restrictive alternative she should get one more chance to prove herself. The seriousness of the charge of child abuse and the outrageous facts under which T.L. was convicted of that charge preclude this alternative. Her track record demonstrates a lack of concern for her children and a pattern of abuse.[*] Her behavior with her children, especially C.L., since the incident demonstrates her failure to comprehend C.L.'s condition and the potential frustrations and problems of dealing with these children. To place them in her care would amount to endangering their physical, emotional, and psychological well-being.
While the trial court did not specifically find that termination is the least restrictive alternative, the lack of options is implicit in the trial court's findings. The least restrictive alternative is viewed from the child's point of view. See R.Z.F., supra. While the "best interest of the child" and "the least restrictive alternative" remain separate bases for termination decisions, in this case we see it implicit from the trial court's findings that the interest and welfare of the children would be best served by terminating T.L.'s parental rights. The child's best interest must be the paramount consideration in the determination to terminate parental rights. People in Interest of S.L.H., 342 N.W.2d 672 (S.D.1983).
The children were found dependent and neglected because they suffered physical and emotional abuse while under their mother's care. She admitted to physically abusing the children. Certain compelling circumstances, including physical abuse, warrant termination of parental rights. People in Interest of T.L.J., 303 N.W.2d 800 (S.D.1981). The trial court found her insensitive and neglectful of their needs and unable to discipline them appropriately and this finding was supported by the evidence. The evidence further supports the trial court's finding that she failed to follow through on her child care classes and case plan while incarcerated. T.L. has not demonstrated the alleged improvement in her parenting skills. This court has affirmed the termination of parental rights based on a trial court's conclusion that there was no indication in the mother's past conduct, or her present circumstances, that the conduct would improve in the future. Matter of M.S.M., 320 N.W.2d 795 (S.D.1982).
We note the trial court found that B.R. has blossomed in foster care and it would be detrimental to return him to T.L. C.L. has special needs for which T.L. is not suited. The court further found that both children's needs are met in their present foster care situations and that T.L. is not capable of filling their needs. The only inference possible from the trial court's findings is that termination of T.L.'s parental rights is the least restrictive alternative and we agree.
T.L. has appealed from the trial court's disposition only. Her argument that hearsay evidence was improperly admitted fails in light of SDCL 26-8-30. While the statute provides that adjudicatory hearings be conducted in a court with the applicable rules of civil procedure, it further provides that
all other hearings under the provisions of this chapter shall be conducted under such rules and regulations as the court may prescribe and designed to inform *480 the court fully as to the exact status of the child and to ascertain its history and environment and the past and present physical, mental, and moral condition of the child, and of its parents, custodian, guardian, or relatives....
The decision to terminate did not rely upon "uncorroborated hearsay." It was based in part upon personal observations of the social workers and foster parents involved with these children and the testimony of C.L.'s physical therapist. The trial court noted that its decision was also based upon reports which were designed to inform the court fully as to T.L.'s past and present physical, mental, and moral condition. Appellant stipulated to admission of her psychological report and the correction officer's report which further demonstrated her deficiencies as a parent.
Whether or not the social workers were qualified by the court as experts is irrelevant. Under SDCL 19-15-1 lay witnesses may render opinions. T.L. failed to object to this testimony and thus her complaint is not preserved on this appeal. Matter of S.J.Z., 252 N.W.2d 224 (S.D.1977).
Finally, T.L. argues that the evidence was insufficient to support termination. Considering the evidence that we have outlined with respect to the other issues, we consider this issue frivolous.
We affirm the termination.
All the Justices concur.
WUEST, Circuit Judge, acting as Supreme Court justice, participating.
NOTES
[*] T.L. has five natural children, she voluntarily relinquished her rights to the first two and she abandoned the third. C.L. and B.R. are her fourth and fifth children.