This appeal is from the Final Decree of Disposition Concerning M.J.B., Jr., dated February 27, 1984, which terminated the mother's and father's parental rights. The parents' rights to a daughter, V.B., were terminated on the same date. The parents appeal the termination of their parental rights over M.J.B., Jr. They do not appeal termination of their parental rights over V.B. We affirm.
Mother's first child, L.R., conceived as the result of a rape, was removed from the parents' custody after a series of injuries which strongly indicated abuse. L.R. was placed in foster care and mother voluntarily terminated her parental rights to the child. The birth of a second child, M.J.B., Jr., was planned by both parents; however, the birth of the third child, V.B., less than a year later, was not.
Beginning in September 1981, while mother was pregnant with V.B., the County *Page 922 
Health Nurse became involved with the family through a nutrition program for women, infants, and children. When V.B. was seven and one-half months old, the nurse became concerned that the child had gained only four pounds and grown only five and three-quarter inches since birth. The children's grandmother, with the parents' approval, had physical custody of V.B. for most of the time between July and December of 1982. V.B. thrived in her grandmother's care. The county nurse eventually referred the family to the South Dakota Department of Social Services (Social Services) and found that Social Services was already working with the parents.
Although the nurse referred the family to the regional nutritionist for counseling several times, the parents did not keep the appointments until the nutritionist contacted them regarding M.J.B., Jr. The parents were given pamphlets, handouts, and verbal instructions on child nutrition. Based upon the parents' reports of M.J.B., Jr.'s diet, Social Services personnel determined that it was inadequate and, despite their attempts to help, it did not improve. His hemoglobin fluctuated and his parents were reluctant and sometimes failed to comply with requests for subsequent testing. Both children, while in their parents' care, were well below the average percentile in height and weight for children their age. The record also discloses that required immunizations were not kept current for either child.
V.B. was not examined by a physician from her birth until age five months. When both children were finally examined, it was determined that M.J.B., Jr. lagged developmentally and that V.B. was frail, lethargic, and did not respond normally to stimulation. After V.B. was removed from the home and placed in foster care, she quickly gained weight and became more alert and active. When custody was returned to the parents, the doctor requested weekly examinations. The grandmother brought the child in for the first examination three months later.
In September of 1983, four days after V.B. was returned to the parents' custody, V.B. was examined by a physician who found bruises on her chest, back, and abdomen that were not consistent with the parents' explanation. A month later, V.B. was examined again and new bruises and swelling were found. Again, the doctor determined that the bruises were inconsistent with the parents' explanation.
The two children involved in this action were born eleven months apart. The mother admitted that she could not handle two children at one time and that she virtually ignored V.B. V.B. was removed from the home permanently on October 9, 1983. On October 10, the parents told Social Services that they might send M.J.B., Jr. away to live with his grandmother in Colorado if they could regain custody of V.B.
In January of 1983, the parents began counseling for their individual problems and problems with their relationship. Minnesota Multiphasic Personality Inventory (MMPI) results indicate that both parents have personal and relationship problems that create a violent atmosphere in the home. Counselors and social workers testified that the parents' motivation to solve their individual and mutual problems was not consistent. Attendance at counseling sessions was sporadic; they kept eleven of twenty-six appointments. The record indicates that when the parents were motivated to solve personal and marital problems they attended counseling sessions and made positive steps; however, attendance inevitably fell off and progress ceased. As a result of their poor attendance the Social Services' counselor was unable to initiate parenting instruction. Although the parents exhibit a genuine concern and affection for M.J.B., Jr., neither parent is capable of providing an environment conducive to improving M.J.B., Jr.'s developmental deficiencies. SDCL 26-8-6 defines a neglected or dependent child as one "[w]ho lacks proper parental care through the actions or omissions of the parent" or a child "[w]hose environment is injurious to his welfare" or a child "[w]ho has sustained emotional harm or mental injury . . . evidenced *Page 923 
by an observable and substantial impairment in his ability to function within his normal range of performance. . . ."
The parents continue to look at their needs above those of their children and the social workers' prognosis for the relationship is not good. Where Social Services' efforts to assist and counsel parents are ignored, termination of parental rights is justified. People In Interest of T.L.J., 303 N.W.2d 800
(S.D. 1981). At least one social worker concluded that M.J.B., Jr. could be indirectly and adversely affected by conflict in the parents' relationship.
The parents raise two issues on this appeal: (1) Whether there is sufficient evidence to support the trial court's acceptance of their admission that M.J.B., Jr. was dependent and neglected; and (2) whether termination of parental rights was the least restrictive alternative in M.J.B., Jr.'s interest.
In reviewing the trial court's acceptance of the parents' open court admission that M.J.B., Jr. was dependent and neglected, this court must examine whether the facts sufficiently support that conclusion. Matter of J.M.A., 286 N.W.2d 324 (S.D. 1979). In addition, we note that SDCL 26-8-2 requires that SDCL ch. 26-8, Dependent and Delinquent Children, "be liberally construed in favor of the state for the purposes of the protection of the child[.]" The question before this court is not whether it would have entered the same findings the trial court entered, but whether the entire evidence leaves a definite and firm conviction that a mistake has been made. J.M.A., supra. In J.M.A., this court affirmed a trial court's termination of parental rights in a situation similar to that presented in this case.
The parents have not taken issue with the trial court's determination that V.B. was dependent and neglected; they do contend, however, that this court must determine for itself whether M.J.B., Jr. was also dependent and neglected. This court has held that when a trial court finds that one child is dependent or neglected, it may, at its discretion, determine the likelihood of abuse of other children in the same family. T.L.J.,supra; Matter of J.L.H., 299 N.W.2d 812 (S.D. 1980); Matter ofR.Z.F., 284 N.W.2d 879 (S.D. 1979); In re K.D.E., 87 S.D. 501,210 N.W.2d 907 (1973).
This court must review the trial court's findings regarding M.J.B., Jr. under the clearly erroneous standard. SDCL15-6-52(a); People In Interest of S.L.H., 342 N.W.2d 672 (S.D. 1983); In re Estate of Hobelsberger, 85 S.D. 282, 181 N.W.2d 455
(1970). The evidence in this case supports the trial court's determination that M.J.B., Jr. has already been adversely affected by poor parental care. His hemoglobin has fluctuated, his physical and mental development lags behind standards of average children his age, and his health needs were ignored while he was under his parents' care.
This court has stated that while parents have a fundamental right to their children that right is not absolute or unconditional. Matter of S.H., 337 N.W.2d 179 (S.D. 1983);K.D.E., supra. Children have rights as sacred and secure in the law as parents have. S.L.H., supra. A license to bring children into this world is not a license to abuse them by omission or commission. People In Interest of C.L., 356 N.W.2d 476 (S.D. 1984); Matter of D.H., 354 N.W.2d 185 (S.D. 1984); Matter ofL.M.T., 305 N.W.2d 399 (S.D. 1981). The law must not abandon children, but must permit them to grow and flourish. J.M.A.,supra. Parental rights must give way to the child's best interest. SDCL 26-8-36; Matter of A.I., 289 N.W.2d 247 (S.D. 1980). Parental rights may be terminated upon a showing that no less restrictive alternative best serves the interest of the child. C.L., supra; Matter of N.J.W., 273 N.W.2d 134 (S.D. 1978). The least restrictive alternative must be viewed from the child's point of view. C.L., supra.
The trial court found that there is a great likelihood that M.J.B., Jr. could be abused if left in his parents' custody and refused to gamble with M.J.B., Jr.'s future *Page 924 
well-being. The trial judge further found that Social Services' recommendation, that they maintain legal custody with physical custody in the parents while the parents continue counseling for six months, was not in the child's best interest. The trial court found that there was (1) a possibility of physical harm to the child, and (2) a possibility that the child's development would be further inhibited. The trial court further found that M.J.B., Jr. should not be required to wait for his parents to acquire parenting skills that may never develop; he is entitled to a stable, healthy environment now. See J.M.A., supra. These findings are supported by testimony, MMPI results, and other clear and convincing evidence.
The trial court properly sought the best interests of the child while giving due consideration for the parents' fundamental rights.
We affirm the trial court's disposition.
All the Justices concur.
WUEST, Circuit Judge, acting as a Supreme Court Justice, participating.