**In the Matter of A.H. Child, and Concerning K.H. Mother.**

No. 15746.

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 1987.

Decided March 23, 1988.

Janice Godtland, Asst. Atty. Gen., Roger A. Tellinghuisen, Atty. Gen., on brief, Pierre, for appellee State of S.D.

Sean M. O'Brien of Erickson & Helsper, P.C., Brookings, for appellant mother.

MILLER, Justice.

This is an appeal from an order terminating the parental rights of K.H. (Mother) over A.H. (Son). The trial court found Son to be neglected or dependent on November 12, 1985. An affidavit seeking termination of Mother's parental rights over Son was filed on September 23, 1986. Mother's rights were ordered terminated on March 4, 1987.

## FACTS

Mother was fourteen years old when she gave birth to Son on January 12, 1984. The Department of Social Services (DSS) became involved with Mother prior to the birth of Son. Mother was placed by DSS in the Threshold Home in order to prepare her for the birth. Also included in the program were parenting training, weekly meetings wherein parenting issues were discussed, and various other group sessions. Mother resided at Threshold Home for approximately two months before and one month after the birth of Son.

It is undisputed that from the time of his birth until approximately October of 1985, Mother generally cared for all needs of Son and he developed normally for his age. A close bonding relationship was established between the two.

Referrals of varied accusations were made to DSS regarding Mother and Son commencing soon after Son's birth. DSS became involved and started actively providing services to Mother and Son continuously after March 12, 1985. After one referral, a DSS social worker made a home visit to Mother (then age 16) at her trailer home on October 10, 1985. The possibility of a family support worker to help Mother was discussed. Mother signed a case service plan on October 22, 1985, in which parenting, Mother's lack of education, alcohol abuse, and housekeeping skills were listed as problems. The social worker arranged for Mother to be assessed at an alcohol referral center.

On October 25, 1985, the social worker investigated another referral made concerning Son's well-being. Mother admitted to the social worker that she had had a drinking party attended by several other minors. She admitted to having become "really wasted." During the party, because Son would not go to sleep, Mother struck him. Mother had checked him for bruises the next day but found none. Because of all of the circumstances, Son was placed in protective custody. Mother agreed to place the child in foster care.

A dependency and neglect petition was filed and an adjudicatory hearing was held on November 12, 1985, wherein Mother appeared and admitted the allegations contained in the petition. The trial court then found Son to be a neglected or dependent child and ordered that the placement of Son continue with DSS. The court required Mother to abide by such rules and regulations provided by DSS and to attend counseling and treatment as required by DSS.

The foster mother testified that when Son was first placed into their care (then age twenty-one months) he had temper tantrums and would bite people. Mother had sent along a box of infant rice cereal. Son did not use silverware, rather he ate with his mouth like a dog. Son adapted to the use of silverware rapidly; however, he hoarded his food for the first ten days and did not seem to know when to quit eating. As a result, he gained three pounds in ten days. Son would not let anyone touch his food without becoming hysterical. Although Son spoke well, his language was very foul.

Regular visits were arranged between Mother and Son by DSS between October of 1985, and the fall of 1986. The visits took place usually two times per week, with an extended ten-day visit over Christmas.

Although Mother and Son got along fine during their visits, Mother's trailer was commonly in disarray (with beer cans, dirty dishes, etc.) when the social worker arrived with Son. There was testimony from foster parents that Son's problems, such as the use of foul language, reappeared after the visits with Mother.

While Son was in foster care, DSS and other agencies offered many services to Mother, including a family support worker, the adolescent drug program at the Human Services Center in Yankton, South Dakota, services through the Department of Vocational Rehabilitation, guidance counseling made available through the local school district, and parenting classes through the Women's Center. The social worker still observed no significant change in Mother.

Mother was assessed on October 25, 1985, for alcohol and drug abuse by a drug

counselor. The test results were extremely high, indicating she had a problem with alcoholism and drug dependency. Mother agreed to in-patient treatment at the Human Services Center. Such treatment was unavailing as Mother was noncooperative and, as a result, she was eventually terminated from the program before completion.

Job Services found a job for Mother at the South Dakota State University (SDSU) Dairy Plant. Mother was caught lying regarding missing work. (For example, on one occasion she said Son was in the hospital with heart problems in Sioux Falls.) Her employment at SDSU was terminated. Mother's next job at a pizza establishment went better, as she was regarded there to be an excellent employee.

Mother seems to have had several problems abiding by the law. On November 6, 1986, she was arrested for underage consumption of low-point beer (apparently she was involved in many drinking parties); she was involved in the theft of a Christmas tree; and she allegedly threatened witnesses against her at a juvenile trial. In January, 1987, Mother was found to be a delinquent child, arising out of her passing a forged check and a no-account check. As a result of that adjudication, she was placed in the State Training School in Plankinton.[1]

A licensed psychologist evaluated both Mother and Son in January, 1987. He testified that they were bonded to each other; however, he also stated that Son was bonded to the foster mother. Psychologist found Son to be well adjusted in spite of the transition that he had to make due to changes in his home environment. Moreover, psychologist was not optimistic about Son's continued development and stability if he were to be placed with his Mother. Psychologist stated that Son needed a permanent, stable home and that the longer the child remained in a state of flux the longer the required adjustment time for the child and the greater the degree of adjustment difficulties.

Psychologist determined that Mother had problems with impulsiveness, had a lack of good judgment in association with her peers and with the use of drugs and alcohol, and that she lacked well-defined social values. Psychologist minimized Mother's claimed guilt and remorse because she displayed a lack of self-control and age-appropriate social judgment. It was his opinion that Mother was particularly susceptible to a relapse in her drug and alcohol abuse based upon her extensive history of abuse. Psychologist also concluded that Mother would be difficult to treat because of her personality characteristics. He was pessimistic about a prognosis for a positive change in Mother in the foreseeable future. He stated that although Mother had a genuine love for her Son, she consistently demonstrated an inability to use appropriate self-control. It was the psychologist's opinion that it would be difficult for her to provide consistent, stable parenting to Son on a long-term basis. Psychologist also stated that after Mother was released from Plankinton, she would need to evidence consistent, appropriate behavior to demonstrate that she had changed and would no longer violate major social mores.

## ISSUE I

### WHETHER THE FINDINGS OF FACT ARE CLEARLY ERRONEOUS.

■ Mother challenges twenty-two of the fifty-two findings of fact, claiming that they are clearly erroneous. In the past, we have consistently stated that the trial court's findings will not be set aside unless they are clearly erroneous and, after reviewing the evidence, we are left with a firm and definite conviction that a mistake has been made. *See Matter of L.B.*, 416 N.W.2d 598 (S.D.1987); *People in Interest of T.H.*, 396 N.W.2d 145 (S.D.1986); *People in Interest of M.W.*, 374 N.W.2d 889 (S.D. 1985); *In re A.M.*, 292 N.W.2d 103 (S.D. 1980).

We have carefully reviewed the transcripts of the testimony and considered the objections to the trial court's findings of fact. We do not find the findings of fact to be clearly erroneous.

1. As of the date of the reply brief, Mother had been discharged from the State Training School.

## ISSUE II

WHETHER TERMINATION OF MOTHER'S PARENTAL RIGHTS WAS THE LEAST RESTRICTIVE ALTERNATIVE.

■ The question for us on review is " 'whether the trial court was clearly erroneous in finding that the evidence supporting termination was clear and convincing.' " *Matter of K.C.*, 414 N.W.2d 616, 620 (S.D.1987) (citations omitted); *T.H., supra; In re S.M.*, 384 N.W.2d 670 (S.D. 1986). Also, we have recently clarified that what the trial court has found to be the least restrictive alternative commensurate with the best interests of the child is an issue of fact, subject to the clearly erroneous standard of review. *K.C., supra.* Although it is necessary for the trial court to enter its final determination of the least restrictive alternative (in the best interests of the child) as a conclusion of law, it is nonetheless an ultimate finding, subject to a clearly erroneous standard of review. *K.C., supra.*

■ Mother claims State failed to show misconduct or unfitness on her part. We find just the opposite to be true, as Mother's unfitness as a parent is most apparent after reading the entire record. Son was temporarily removed from Mother's home because she struck him when she was, in her own words, "really wasted." On many occasions Mother chose to party with her friends (normally other minors) rather than spend time with Son. Mother clearly appeared before the court as an alcoholic and a chemically dependent teenager who was much too immature to provide proper care for a child. Mother failed to accept responsibility for her actions and would not responsibly follow through on any of the many programs offered to her. Mother made no progress in spite of the extensive services offered and provided. This lack of progress was, to a great extent, a result of her own conscious decisions.

Mother claims that State failed to show how her own personal problems have in any way affected the welfare of Son. However, the record demonstrates that Son had profound behavioral problems as displayed when he was first placed in foster care. He bit people, had temper tantrums, ate like an animal, and used foul language. Son would appear to make progress in stable foster homes but upon return to foster homes, after visits with Mother, he seemed to revert to some of his initial behavior problems.

■ Mother argues that because a psychologist testified that an alternative to termination of her parental rights would be for Mother and Son to be in more contact, they should be placed together in foster care and be closely monitored by DSS for a period of time. We agree with the trial court that joint placement in foster care with her Son would not be a viable available alternative to termination. First, even were such a placement logistically available (which it apparently is not), DSS is only required to provide *reasonable* services, *not every possible* service. *In re C.L.*, 356 N.W.2d 476 (S.D.1984). Furthermore, the psychologist did not recommend that joint foster care placement would be appropriate. He merely stated that Mother needed to show maturity, take responsibility for her own actions and demonstrate that she could stay on the straight and narrow on her own without the benefit of someone to constantly help her. Furthermore, the psychologist was pessimistic about Son's continued development and stability were he to be placed with Mother.

Finally, Mother claims the court should not terminate parental rights on the basis of her alcoholism, arguing that it did not interfere with her ability to care for her Son. However, it seems clear that it was not and is not safe for DSS to return child to Mother, due in part to her alcohol dependency. As a result of Mother's alcohol problem and her lack of ability and/or desire to deal with it, her Son was growing up in foster care and has been in such care for over two years.

■ It must not be forgotten that the interests of the children are paramount. *L.B., supra.* The least restrictive alternative is viewed from the child's point of view, not that of the parents. The best

interests of the child must prevail. *T.H., supra: C.L., supra; In re R.Z.F.,* 284 N.W.2d 879 (S.D.1979). Additionally, termination is not conditioned upon the exhaustion of *every* possible form of assistance. *T.H.., supra.* In the event that counseling and therapy fail to improve parenting skills, termination of parental rights is justified. *In re D.H.,* 354 N.W.2d 185 (S.D.1984); *In re S.S.,* 334 N.W.2d 59 (S.D. 1983); *In re S.A.H.,* 314 N.W.2d 316 (S.D. 1982). When all reasonable attempts and assistance fail, no narrower alternative remains. *In re N.J.W.,* 273 N.W.2d 134 (S.D. 1978). Finally, requiring certitude and stability in life is in the best interests of children. *S.S., supra.*

 Applying these well-settled principles of law to the facts in this case, we cannot hold that the trial court was clearly erroneous. This court's prime concern is Son. He is four years old and has been in foster care since he was twenty-one months. He is now both happy and healthy, but he needs a *permanent* home. Mother has had over fifteen months, with a great deal of social assistance, to demonstrate that she had the maturity and responsibility to offer Son. However, no progress was made. We cannot and will not require Son to wait in limbo another year or two or more for a mother who may never be able to properly parent him. Under the facts of this case, we agree with the trial court that termination is the least restrictive alternative available commensurate with the best interests of the child. *K.C., supra.*

We have considered all of the other issues raised by Mother and find them to be without merit.

Affirmed.

WUEST, C.J., and MORGAN and SABERS, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I respectfully dissent. This is a case of a child having a child and being a mixed-up, immature teenager who took a wrong turn on the road of life. It appears to me, however, that this young girl, as reflected by the trial transcript herein, sincerely and earnestly was attempting to change her life.

All testimony reflects that the mother's relationship to the son was one of genuine love and affection and that there was a deep bond between the mother and son.

Per Exhibit No. 8, her parenting improved and she was becoming more stable. One witness, Dr. Byrd, testified that the young mother was becoming more stable through counseling and informal parenting classes. Furthermore, he testified that an alternative course to follow in this case would be to reunite the son with the mother and then to place the son and mother both under the supervision of the Department of Social Services for appropriate guidance and supervision. This young mother is not as black as the majority opinion portrays her to be and, in my opinion, there are statements in the majority opinion that are not supported by the record. In conclusion, there was a least restrictive alternative available to the trial court to include placing the child in custody of other responsible parties or agencies while the young mother continued to improve.