#24659, 24664-a-PER CURIAM

**2008 SD 80**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

IN THE MATTER OF J.B.,
ALLEGED ABUSED/NEGLECTED CHILD

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE WILLIAM J. SRSTKA, Jr.
Judge

\* \* \* \*

SCOTT B. CARLSON of
Crew & Crew                                    Attorneys for appellant
Sioux Falls, South Dakota                      father, A.B.

MATTHEW L. OLSON
Minnehaha County
Public Defender's Office                       Attorneys for appellant
Sioux Falls, South Dakota                      mother, N.B.

LAWRENCE E. LONG
Attorney General

ANN M. HOLZHAUSER
Assistant Attorney General                     Attorneys for appellee
Pierre, South Dakota                           State of South Dakota.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JULY 24, 2008

OPINION FILED  **8/6/08**

#24659, 24664

PER CURIAM

[¶1.]         A.B. (father) and N.B. (mother) appeal the termination of their parental rights to their minor child, J.B. (child).  We affirm.

FACTS

[¶2.]         Child was born on May 29, 1997.  During this time father and mother were in the process of having their parental rights terminated to five other children as the result of physical and emotional abuse.  There were also concerns of sexual abuse by the parents in that case, although they were not substantiated.  On June 9, 2006, while at the dentist's office, a hygienist asked about a bruise on child's face.  Child told the hygienist that his mother got mad at him while cutting his fingernails and slapped him three to four times, giving him a bloody nose.  He confirmed the account of the injury to the dentist and the incident was reported to the Department of Social Services.

[¶3.]         Law enforcement visited with mother and father.  Mother maintained it was an accidental blow with mother's elbow while she trimmed his nails.  Child indicated mother hit him because she was angry and had done it before.  Child was taken into protective custody.  Child was later admitted for residential treatment.  He suffered from ADHD, encopresis,[1] mild mental retardation and lacked social skills.  Child provided the same account of physical abuse to his care providers.

---

1.    "Encopresis is repeatedly having bowel movements in places other than the toilet after the age when bowel control can normally be expected." http://medical-dictionary.thefreedictionary.com/encopresis (last visited July 23, 2008).

Eventually, child disclosed further instances of physical abuse, fighting between his parents and incidents of sexual abuse committed by father.

[¶4.]        Child indicated mother was aware of the sexual abuse and when it occurred he was allowed special treats to make up for it.  Child's encopresis was also a sign of sexual abuse.  The care providers noticed that child was afraid of father; he had recurring nightmares and had repressed memories out of fear.  Child also drew pictures depicting sexual abuse by his father.  Revelations by the parents' other children concerning their extent of sexual abuse by both mother and father were also introduced at the dispositional hearing.  As a result of these sexual abuse disclosures visits were discontinued.  Child went sixteen days without soiling himself.  Prior to that time he soiled himself on multiple occasions per day and again began soiling himself when visits resumed.

[¶5.]        Psychological testing conducted on both parents appeared invalid because they "faked good."  Mother's result were offset by a high abuse score and father appeared to be covering up, denying and minimizing in his responses.  Mother and father denied any incidents of abuse, whether physical or sexual.  The parents only made "minimal" progress in family therapy sessions.  The testimony indicated that child would benefit from a stable and safe environment where he could work through the trauma he experienced without fear of repercussion from his parents.  The trial court terminated mother and father's parental rights.

## ANALYSIS

### ISSUE ONE

[¶6.]        **Whether the trial court erred in allowing hearsay statements during the adjudicatory and dispositional hearings.**

[¶7.]     Mother and father claim that the trial court erred in allowing hearsay statements from child concerning abuse during both phases of the termination proceeding.

*Adjudicatory phase*

[¶8.]     During the adjudicatory phase child's revelations of sexual abuse had not yet surfaced; although there was concern based on prior indications of sexual abuse and child's encopresis.  The parents' challenge to hearsay testimony at this phase related to child's statements concerning the incident where mother slapped him.  In that regard, objection was made to the dental hygienist's testimony concerning what child had told her happened to cause the bruising.  However, no objection was made to the same statements as offered from the investigating officer, DSS caseworker or a Children's Home Society therapist.

[¶9.]     The State concedes that the statements were not admissible under SDCL 19-16-38 (statement of sex crime, physical abuse, or neglect by victim under age ten) but argues the statements were admissible under SDCL 19-16-39 (statements alleging child abuse or neglect).  That statute provides:

> An out-of-court statement not otherwise admissible by statute or rule of evidence is admissible in evidence in any civil proceeding alleging child abuse or neglect or any proceeding for termination of parental rights if:
>
> (1)     The statement was made by a child under the age of ten years or by a child ten years of age or older who is developmentally disabled, as defined in § 27B-1-3; and
>
> (2)     The statement alleges, explains, denies or describes:
>                                   * * *
> (c)     Any act of physical abuse or neglect of the child by another . . . and

      (3)     The court finds that the time, content and circumstances of the statement and the reliability of the person to whom the statement is made provide sufficient indicia of reliability; and

      (4)     The proponent of the statement notifies other parties of an intent to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence, to provide the parties with a fair opportunity to meet the statement.

The trial court ensured that notice of the statement had been provided but did not conduct an on-the-record discussion concerning "sufficient indicia of reliability" before allowing the statement into evidence. Although this finding should have been made by the trial court, a review of the record demonstrates the reliability of the statement based on testimony concerning child's understanding of truthfulness, his age, the particulars of the statement, the timing of the statement, the repetition of the statement and the fact the injury and how it was caused were consistent with the events where mother states she "accidentally" hit the child causing the bruising and bloody nose while trimming his fingernails.[2] Further, given the fact the same

---

2.   "As witnesses, children are neither inherently reliable nor inherently unreliable. Each child's statement must be evaluated on its own merits. Several factors should be considered when assessing reliability. These include:

     (1) the child's age and maturity; (2) the nature and duration of the abuse; (3) the relationship of the child to the offender; (4) the coherence of the statement, bearing in mind that young children may sometimes describe incidents in age appropriate language and in a disorganized manner; (5) the child's capacity to observe, retain, and communicate information; (6) the nature and character of the statement itself, considering the child's

accounts were relayed through other witnesses without objection, any error would be harmless.  *See* Interest of J.G.R., 2004 SD 131, ¶ 19, 691 NW2d 586, 592 (applying harmless error analysis to an adjudicatory hearing).

*Dispositional phase*

[¶10.]		Parents also objected to hearsay statements concerning abuse offered at the dispositional phase.  Although it has been well-settled law that the rules of evidence do not apply at the dispositional phase, the parents contend that SDCL 19-16-39, as set forth above, applies to dispositional hearings based on the phrase "any proceeding for termination of parental rights" contained in its introductory paragraph.  However, this argument overlooks the statutory structure and purpose of the dispositional phase along with the prefatory phrase contained in SDCL 19-16-39 that this section only applies to statements "not otherwise admissible by statute or rule of evidence."

[¶11.]		SDCL 19-9-14 specifically provides that the provisions of chapter 19-16, and consequently SDCL 19-16-39, do not apply to dispositional proceedings.  SDCL 26-7A-56 clearly indicates "the rules of civil procedure and the rules of evidence apply to adjudicatory hearings.  All other hearings shall be conducted under the rules prescribed by the court."  SDCL 26-7A-34 similarly states that an

---

developmental limitations in understanding and describing sexual behavior; (7) any motivation of the child to make a false allegation or a false denial; (8) the child's susceptibility to suggestion and the integrity of the situation under which the statement was obtained; and (9) all the circumstances under which the statement was made."

State v. Guthmiller, 2003 SD 83, ¶ 13, 667 NW2d 295, 301.

adjudicatory hearing "shall be conducted in accordance with the rules of civil procedure" but dispositional hearings "shall be conducted and designed to inform the court fully of the exact status of the child and to ascertain the history, environment and past and present physical, mental and moral condition of the child and of the child's parents, guardian, or custodian." Based in part on this legislative scheme, this Court has determined that another very similar evidentiary rule, SDCL 19-16-38, did not apply at the dispositional phase. *See* Interest of H.M., 474 NW2d 267, 270 (SD 1991).[3] Likewise, we conclude the language of SDCL 19-16-39 has not changed this well-settled principle as demonstrated by the more specific statutory enactments. As a result, the trial court did not abuse its discretion in admitting this evidence at the dispositional hearing.

ISSUE TWO

[¶12.]        **Whether there was sufficient evidence to support termination**.[4]

[¶13.]        SDCL 26-8A-21 requires that DSS shall make reasonable efforts directed toward the goal of returning a child to the home. However, DSS is not required to exhaust every possible form of assistance and what is reasonable depends upon the facts and circumstances of each case. In re W.G., 1999 SD 85, ¶ 16, 597 NW2d 430, 433. The trial court found reasonable efforts had been made in

---

3.     This Court has also recently held that "the *Crawford* analysis involving the Sixth Amendment right of confrontation in criminal cases is not applicable in this civil abuse and neglect proceeding." Interest of S.A., 2005 SD 120, ¶ 17, 708 NW2d 673, 679.

4.     We have consolidated parents' remaining issues into one section here. They individually challenge whether reasonable efforts were made, whether there was clear and convincing evidence to support termination and whether termination was the least restrictive alternative.

assisting the parents. The record reflects that the parents were offered and received services, not just during this matter, but over the course of several years. This included case management, home-based counseling, psychological testing, parenting classes, residential care, family therapy and visitation. However, the parents refused to address issues during family therapy and denied and minimized their conduct not only in regard to this child but also the events surrounding the removal of their five other children.

[¶14.]     Parents also maintain that the evidence supporting termination of parental rights was not clear and convincing. The State must prove a child is abused and neglected by clear and convincing evidence. Matter of J.A.H., 502 NW2d 120, 124 (SD 1993). The trial court's findings of fact will not be set aside unless they are clearly erroneous and "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Matter of D.H., 354 NW2d 185, 188 (SD 1984). The trial court determined that the parents' explanation for the physical abuse that initiated this case was not credible. Their statements and denials were contradicted by both the child's statements and those of his prior siblings detailing past physical and sexual abuse. Child also provided detailed statements of sexual abuse by father and described how he would come into his room at night. Mother was aware of this conduct and did nothing to prevent it. As indicated by the therapists, child's condition where he soils himself at such an advanced age is indicative of sexual abuse and emotional trauma. This is particularly telling when child gained control over this problem when visitations were cancelled after he disclosed the sexual abuse. Further, child was fearful and angry before and after the visits with his parents and always wanted a trusted

adult with him during those times.  On this record, the trial court did not err in determining child was abused and neglected by clear and convincing evidence.

[¶15.]	We have always recognized that the needs of the children are paramount and that their best interests must prevail.  In re A.H., 421 NW2d 71, 75-76 (SD 1988).  Parental rights may be terminated if it is in the best interests of the child and is also the least restrictive alternative available.  *Id*.  The best interests of the child are viewed from the child's, not the parents', perspective.  *Id*.  Again, in order to overturn this finding of fact, the parents must demonstrate the trial court was clearly erroneous.  Matter of J.Y., 502 NW2d 860, 862 (SD 1993).  In light of the physical and sexual abuse and this child's overwhelming need for stability and security in order to overcome his severe emotional damage, the trial court was not clearly erroneous in determining termination was the least restrictive alternative.

[¶16.]	Affirmed.

[¶17.]	GILBERTSON, Chief Justice, SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.