**In the Matter of the Termination of Parental Rights Over D.H., and Concerning His Mother, G.H.**

No. 14284.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1984.

Decided Aug. 15, 1984.

Michael J. Williams, Asst. Atty. Gen., Pierre, for appellee State of South Dakota; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Forrest C. Allred, Aberdeen, for appellant G.H.

Daniel R. Moen, Aberdeen, for appellee D.H.

MORGAN, Justice.

This appeal is from an order filed June 1, 1983, which terminated the parental rights of G.H., the mother, over D.H., her son. Notice of this appeal was filed July 20, 1983. Subsequently, on November 1, 1983, G.H. petitioned for a new hearing and on December 14, 1983, that petition was denied. We affirm the trial court's disposition of the petition for termination and the denial of the petition for new hearing.

On April 21, 1981, D.H. exhibited violent behavior at the grade school he attended and had to be physically restrained by the school principal for forty minutes. When G.H., the child's mother, was asked to take D.H. home, she responded that she could not handle him and did not want him. D.H. was placed in emergency protection and removed from the home at that time. Because no temporary foster home was available, D.H. was turned over to the South Dakota Department of Social Services (Social Services) and placed at the New Beginning Center. Judge Dobberpuhl signed a detention order on May 18, 1981, which gave Social Services custody of D.H. for purposes of a thirty-day evaluation. In a petition filed June 2, 1981, the State alleged that the child "lacked proper parental care through the actions and omissions of the parent ..." and requested a declaration that D.H. was dependent and neglected. Based on the thirty-day evaluation, an order dated June 29, 1981, placed D.H. in the physical and legal custody of Social Services for one year with a six-month review regarding the possibility of returning him to the home. It was further ordered that (1) D.H. receive treatment for his assaultive behavior and intense anger in the least restrictive environment, (2) that D.H. receive individual and family therapy, (3) that G.H. receive individual and family therapy, and (4) that G.H. cooperate with Social Services.

Six months later, in findings of fact and conclusions of law dated February 3, 1982, and based on a further dispositional hearing held January 26, 1982, the trial court reviewed the situation and found that G.H. had not undergone individual or family therapy and had not cooperated with Social Services. In its six-month review, the trial court also found that D.H. was dependent and neglected, as defined in SDCL ch. 26–8, and that G.H. had not abided by the court's prior order. D.H. was left in physical and legal custody of Social Services for a second six months under the conditions and stipulations set out in the prior June 29, 1981, order. The trial court further ordered that if G.H. continued to violate the

order her parental rights would be terminated. Social Services filed a petition requesting termination of G.H.'s parental rights on July 7, 1982. The petition alleged that G.H. failed to cooperate in family and individual therapy and counseling and had indicated by her conduct that she had no desire to respect the requirements the court set out.

An adjudicatory hearing was held on January 25, 1983, and adjudicatory findings and conclusions, dated April 20, 1983, were filed on June 1, 1983. The trial court's crucial adjudicatory findings were that (1) D.H. had been a resident of Simmons House since April 1981, (2) that Social Services had worked with and provided services for G.H. from July 1981 to January 1983, (3) that G.H. did not cooperate and the efforts to assist her were unsuccessful, (4) that D.H.'s assaultive, aggressive, and defiant behavior increased when he had contact with G.H., and (5) G.H.'s refusal to cooperate has slowed D.H.'s treatment and progress. The trial court concluded that it found by clear and convincing evidence that D.H. suffered emotional damage from G.H.'s failure to provide proper parenting and that he was still dependent and neglected, pursuant to SDCL 26–8–6.

Dispositional findings and conclusions were also filed on June 1, 1983, and were also based on the hearing held on January 25, 1983. The trial court's relevant dispositional findings include: (1) that Social Services had furnished G.H. and D.H. with Aid to Dependent Children, parenting classes, individual therapy for mother and child, family therapy, financial planning and support services, (2) that G.H. failed to attend several classes and sessions and did not cooperate when she did attend, (3) that financial planning and support services were considered unsuccessful and were discontinued on that basis, (3) that G.H. refused to accept responsibility for D.H.'s problems and refused to admit to her own, (4) that the Social Services caseworker assigned to assist G.H. and D.H. believed that G.H.'s parenting skills had not improved and the child's interest would be

best served if G.H.'s parental rights were terminated, and (5) that D.H.'s assaultive, aggressive, and defiant behavior results from G.H.'s influence and the prognosis for D.H.'s improvement is poor as long as G.H. continues her present stance.

The trial court's crucial conclusions included: (1) that the child's welfare demands a final resolution so that a measure of stability and permanence can be provided, and (2) that clear and convincing evidence indicates that termination of G.H.'s parental rights is the least restrictive alternative available and in the child's best interest. The termination decree was signed on April 20, 1983 and filed June 1, 1983. Notice of appeal was dated and filed on July 20, 1983.

On November 1, 1983, G.H. filed a petition for new hearing pursuant to SDCL 26–8–63, on grounds that new evidence had been discovered which could affect the prior termination decree. The affidavit which accompanied the petition alleged that no more could be done for D.H. at Simmons House and that Social Services was having difficulty placing D.H. for adoption. The petition for new hearing questioned whether, given these facts, termination of G.H.'s parental rights is in D.H.'s best interest. The trial court denied the petition; it found that the supporting affidavit did not sufficiently establish that new evidence had been discovered and that SDCL 26–8–61 precluded its jurisdiction. The trial court concluded that based on SDCL 26–8–61, which prohibits modification of termination decrees, it lacked jurisdiction to grant a new hearing in a termination case.

■ On this appeal G.H. complains first that the evidence was not sufficient to support termination of her parental rights. SDCL 26–8–35 provides in part that "when a child has been adjudicated to be neglected or dependent, the court shall enter a decree of disposition." The Code also provides that the requisite dispositional decree may terminate "all parental rights of one or both parents in the child when it finds that the best interest and welfare of the child so require." SDCL 26–8–36. The trial court

must find by "clear and convincing evidence that termination of parental rights is in the best interests of the child." *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Matter of S.L.*, 349 N.W.2d 428 (S.D.1984); *People in Interest of S.H.*, 323 N.W.2d 851 (S.D. 1982). The trial court specifically concluded as a matter of law that it found by clear and convincing evidence that termination of G.H.'s parental rights is the least restrictive alternative available to serve the child's best interest. We note first that the trial court's rulings and decisions are presumed to be correct and this court will not seek reasons to reverse. *Lytle v. Morgan*, 270 N.W.2d 359 (S.D.1978). Second, if the required findings are made, this court may not reverse. *Cf. Knodel v. Bd. of Cty. Comm. etc.*, 269 N.W.2d 386 (S.D.1978). Finally, we point out that if the record contains evidence to support the trial court's decision, this court will not disturb a trial court's finding of fact. *McLaughlin Electrical Supply v. American Empire Ins.*, 269 N.W.2d 766 (S.D.1978).

■ This court's standard of review is set out in two statutes.

First, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." SDCL 15–6–52(a). Second, "[i]f the court finds that the allegations of the petition are supported ... by clear and convincing evidence in cases concerning neglected and dependent children, the court shall sustain the petition[.]" SDCL 26–8–22.10.

*S.L.*, 349 N.W.2d at 432. This court does not decide factual issues de novo; the question before this court is not whether it would have made the same findings the trial court did, but whether the entire evidence leaves a definite and firm conviction that a mistake has been committed. *S.L.*, *supra*, *citing In Re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970); *Matter of S.H.*, 337 N.W.2d 179 (S.D.1983); *Matter of R.H.*, 300 N.W.2d 271 (S.D.1981). The trial court in this case viewed the

evidence and listened to the testimony of the witnesses. It determined that the evidence clearly and convincingly showed that the child is dependent and neglected and terminated the mother's parental rights. We cannot say that the findings were clearly erroneous.

The record contains extensive testimony by the social workers assigned to work with D.H. and G.H. Sue Wein (Wein) testified that she was assigned to the case in July of 1981 and formulated a case plan which required personal contact with G.H. at least twice a month. Her goal was to offer support services * and any other assistance needed to make G.H.'s home a more fit place for D.H. to grow up. Wein also testified that parenting classes were offered twice after D.H. was removed from the home, but G.H. did not attend either session. According to Wein, G.H. routinely either made appointments and failed to show up or was unavailable and could not meet with the professionals assigned to help her. Wein stated that she "did not feel that [G.H.] was taking responsibility, or feeling that she had any control over what was happening." It is also apparent from Wein's testimony that G.H. made no attempt to make D.H. responsible for his actions.

When family relationships and other crucial matters were broached in therapy sessions or G.H. was confronted on a point, G.H. became defensive, angry or passive and the visits were terminated. Wein felt that G.H. did not cooperate in the attempts social services made toward improving her parenting skills. The mother refused to discuss family background and instructed D.H. not to reveal family secrets to the professionals assigned to help him. The family therapist and G.H.'s individual therapist reported to Wein when G.H. missed appointments or refused to deal with the case plan goals. Wein confronted G.H. with her lack of motivation to change and noncompliance with the court's orders and stipulations. She explained to G.H. exactly what had to be done and the schedule to be met before D.H. could return to the home. Termination of G.H.'s parental rights as a potential result of her lack of cooperation was also explained.

Barb Hirsch (Hirsch) met with D.H. and G.H. approximately fifty-eight times as a family therapist. She testified that while G.H.'s attendance was not a problem, her lack of cooperation was. The family therapy goals were: (1) that G.H. should trust and work with Social Services toward D.H.'s improvement, (2) that G.H. should improve her parenting skills, and (3) that G.H. should give D.H. the message that she is the parent and he is responsible for his actions. None of the goals were met. Hirsch testified that these goals were thwarted by G.H.'s refusal to work on her parenting skills and her lack of trust in the professionals assigned to the case. G.H. withheld information from the therapists and refused to allow D.H.'s grandmother and sister to participate in treatment. G.H. also warned her son not to trust, or talk with other people, including school and treatment personnel. Hirsch testified that as long as G.H. instructs D.H. in private not to trust or talk to other people and refuses to hold him responsible for his actions, further treatment will be futile and his prognosis for recovery will be poor.

Hirsch also testified that after one year of weekly individual therapy sessions with D.H. she believed that D.H. was a danger to himself and others. She explained that because of D.H.'s emotional and mental condition he needed "very special parenting care" that his mother could not provide until G.H. made the changes recommended by the therapists. Hirsch recommended termination of parental rights based on G.H.'s refusal to cooperate and make the specific changes G.H. was told were required for D.H.'s well-being. Notes that Hirsch prepared monthly documented the allegation that personal contact between D.H. and G.H. was detrimental to D.H.'s rehabilitation. He returned from a Christmas visit with G.H. in 1981 and no longer talked with the Simmons House staff spon-

---

* Transportation and budgeting assistance were specifically offered to G.H.

taneously. He was manipulative and exhibited inappropriate behavior. D.H. later explained that during that visit his mother told him to be good but not to work with the social workers or tell them anything that happens in the home. Upon his return from a Thanksgiving visit D.H. had to be restrained and confined by himself several times. In her January 22, 1982, treatment summary, Hirsch stated that D.H.'s "lack of improvement appears to be due to [his] realization in the family sessions that his mother is not doing the things she needs to do to get him back home."

Based on the family's lack of cooperation, the resultant lack of progress between July of 1981 and July of 1982 and the time constraints imposed by the court orders, the social services professionals jointly determined that termination of G.H.'s parental rights would be in D.H.'s best interest. The social workers unanimously felt that G.H.'s parenting skills had not improved since the court's initial order in this case.

During treatment D.H. has at times shown progress and taken responsibility for his behavior. The therapists and counselors agree, however, that no further progress is possible unless G.H. cooperates and gives D.H. messages consistent with the counseling and therapy provided by Social Services. Hirsch stated that after a year of family therapy she saw no changes in G.H. or G.H.'s ability to parent D.H. appropriately. D.H. has expressed that he does not want to return to the home unless the home changes.

SDCL 26–8–6 lists five criteria to define a "neglected or dependent child." Because the criteria are listed in the disjunctive, any one of the five is sufficient support for a determination of dependency and neglect. Three of the five are relevant here:

"[N]eglected or dependent child" means a child:

. . . .

(2) Who lacks proper parental care through the actions or *omissions* of the parent, guardian, or custodian;

(3) Whose environment is injurious to his welfare;

(4) Whose parent, guardian, or custodian *fails or refuses* to provide proper or necessary subsistence, education, medical care or any other care necessary for his health, *guidance*, or well-being[.]

SDCL 26–8–6 (emphasis added). G.H. admitted at the adjudicatory hearing held on June 17, 1981, that D.H. lacks proper parental care through her past omissions as a parent. The evidence and testimony presented leave no doubt that the environment provided by his mother is injurious to D.H.'s welfare and that G.H. has failed and refused to provide proper guidance and well-being. Upon an adjudication of dependency and neglect the trial court must hold a dispositional hearing to consider evidence and order the course of action which best serves the child's and the public's interest. SDCL 26–8–22.11. The trial court may terminate all parental rights in the child when that course serves the best interests and welfare of the child. SDCL 26–8–36.

A trial court may also order any person, as a condition of any statutorily authorized disposition, "[t]o give proper attention to the care of the home ... [t]o cooperate in good faith with an agency which has been given legal custody of a child[.]" SDCL 26–8–59. On June 29, 1981, the trial court in this case ordered that D.H. be placed in the physical and legal custody of Social Services and ordered individual and family treatment for both D.H. and G.H. The mother was also ordered to cooperate with Social Services. Approximately six months later, in its Further Dispositional Findings of Fact, Conclusions of Law and Order of February 3, 1982, the trial judge found that G.H. failed to comply with the June 29 order. He concluded that Social Services would retain custody for an additional six months under the conditions and stipulations set out in the prior order. It was further ordered that if G.H. continued to violate that order, an action for termination would be commenced.

■ The evidence supports the trial court's determination that D.H. lacks prop-

er parental care as a result of G.H.'s parental omissions, that contact with G.H. is injurious to D.H.'s welfare and that G.H. has not provided proper or necessary guidance. The evidence also demonstrates G.H.'s lack of cooperation and compliance with the conditions set out for continuation of her parental rights in D.H. "[W]hen the court finds that the allegations in the petition are supported ... by clear and convincing evidence in cases concerning dependent and neglected children the court shall sustain the petition[.]" SDCL 26–8–22.10; *Matter of S.L., supra.* The record in this case demonstrates that the trial court's findings are not clearly erroneous.

■ The mother's contention that some type of physical abuse or neglect are required to justify termination is spurious. SDCL 26–8–36 flatly states that "[t]he court may enter a decree terminating all parental rights of one or both parents in the child when it finds that the best interests and welfare of the child so require." We find no statutory requirement for physical abuse or neglect. SDCL ch. 26–8, Dependent and Delinquent Children, "shall be liberally construed in favor of the state for the purposes of the protection of the child from neglect or omission of parental duty toward the child by its parents[.]" SDCL 26–8–2. This court has affirmed termination orders where there was no physical abuse. *Matter of S.L., supra; Matter of J.M.A.,* 286 N.W.2d 324 (S.D.1979).

■ The second issue on this appeal raises the possibility that less restrictive alternatives would better serve the child's welfare. At trial, counsel for both D.H. and G.H. argued for a period of separation to provide the opportunity for intensive work with D.H. and with G.H. On this appeal, however, counsel for D.H. and the State argue that termination is the least restrictive alternative. We agree. For eighteen months, Social Services attempted to counsel and rehabilitate G.H. in order to improve her parenting skills. All efforts and case plans failed because of her refusal to cooperate. She refused to discuss parenting goals established by Social Services'

personnel for her benefit and she failed to cooperate in the plans and programs the social workers offered her.

■ Termination of parental rights is not conditioned on exhaustion of every possible form of assistance. *Matter of N.J.W.,* 273 N.W.2d 134 (S.D.1978); *Matter of C.E. and D.E.,* 283 N.W.2d 554, 556 (S.D.1979); *Matter of R.Z.F.,* 284 N.W.2d 879, 882 (S.D. 1979). In the event counseling and therapy fail to improve parenting skills, termination of parental rights is justified. *Matter of A.I.,* 289 N.W.2d 247 (S.D.1980); *Matter of S.A.H.,* 314 N.W.2d 316 (S.D.1982). Social Services cannot implement its plans and programs without the client's participation and cooperation. *Matter of V.D.D.,* 278 N.W.2d 194, 197 (S.D.1979). When all Social Services attempts and assistance fail for lack of cooperation, no narrower or less restrictive alternative remains. *Id; see Matter of N.J.W., supra.*

The trial court specifically found that no less restrictive alternative existed under the facts and circumstances of this case. That finding is not clearly erroneous. After viewing the evidence we are not left with a definite and firm conviction that a mistake has been made. *In Re Estate of Hobelsberger, supra.*

■ The third issue presented in this case is whether termination of parental rights is in the child's best interest. The right to have children does not encompass a right to abuse them by omission or commission. *Matter of V.D.D., supra.* Parental rights must give way to the child's best interest. *Matter of C.E. and D.E., supra; In Re D.K.,* 245 N.W.2d 644 (S.D.1976). The determination that termination best serves D.H.'s welfare was based on the facts set out above. The evidence and testimony clearly and convincingly shows that D.H.'s progress toward rehabilitation is best served by termination.

■ Finally, G.H. contends that the trial court had jurisdiction under SDCL 26–8–62 and 26–8–63 to order a new hearing on its termination order based upon her allegation that new evidence had been dis-

**192**

covered. The general rule is that appeal from a judgment or order strips the trial court's jurisdiction over the subject matter of the judgment or order, except as to certain trivial matters, and this court then has jurisdiction until determination of the appeal. *Matter of Estate of Tollesrud,* 275 N.W.2d 412, 417 (S.D.1979); *Hunter v. Hunter,* 44 Wis.2d 618, 172 N.W.2d 167 (1969). SDCL 26–8–62 provides for a parent's petition for restoration of custody when parental rights have not been terminated. SDCL 26–8–63 states, in part:

> A parent ... of any child adjudicated under this chapter (Dependent and Delinquent Children), may petition the court for a new hearing on the ground that new evidence has been discovered ... which might affect the decree....

SDCL 26–8–61 provides, however, that: "The court may modify or set aside any order or decree made by it, except a decree terminating parental rights." SDCL 26–8–61 controls SDCL 26–8–62 and SDCL 26–8–63 because a specific statute controls a general statute. *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 295 (S.D. 1982). The United States Supreme Court in *Santosky v. Kramer, supra,* pointed out the termination orders completely and irrevocably sever parental rights. SDCL 26–8–1(12) defines termination of parental rights as "the permanent elimination by court order of all parental rights." When the termination order was entered and the notice of appeal was filed, jurisdiction shifted to this court. A dependency and neglect proceeding was reopened in *Matter of F.J.F.,* 312 N.W.2d 718 (S.D.1981), and this court affirmed only because that case involved the petitioner's right to an opportunity to be heard on his claim. *Id.* The Due Process Clause of the Fourteenth Amendment to the United States Constitution required the trial court in *F.H.F.* to hear the claim and transcended any statute that may have precluded a new hearing. *Id.* We concluded in *F.J.F.* that only the "peculiar circumstances" of that case allowed for the new hearing under SDCL 26–8–63 in the face of SDCL 26–8–61. *Id.* at 721.

We affirm the disposition order and the denial of the petition for a new hearing.

All the Justices concur.