This is an appeal from an order declaring T.K. to be a child in need of supervision and placing him under the supervision of a court services officer for a term of six months. We affirm.
 FACTS
On August 8, 1989, Bon Homme County Sheriff Lyle O'Donnell signed a petition requesting that sixteen-year-old T.K. be declared a delinquent child pursuant to SDCL ch. 26-8. The petition was based on incidents occurring at the Bon Homme Hutterite Colony on June 17, 1989. The petition alleged that T.K. had violated SDCL 22-35-6, by entering or refusing to leave property after notice (trespass).[1]
On the afternoon of June 17, 1989, Sheriff O'Donnell was called to a disturbance on the private cemetery of the Bon Homme Hutterian Brethren Colony near Tabor, South Dakota. It is apparently the only South Dakota cemetery in the Hutterian System. On his way to the cemetery, Sheriff O'Donnell stopped to pick up Reverend David Waldner, Vice-President of the Colony and its Elder, Ben Stahl.
Upon his arrival, Sheriff O'Donnell observed a group of people within the fence which enclosed the cemetery. He testified that the individuals in this group identified themselves as members of the "Arc of the New Covenant." O'Donnell further testified that the members of the group were digging holes in the cemetery ground and attempting to erect a new and separate fence inside the cemetery. He testified that the members of the Arc of the New Covenant had placed a headstone at a gravesite in the cemetery. O'Donnell also observed some members of the Bon Homme Hutterian Brethren Colony in the cemetery at the same time.
Sheriff O'Donnell observed T.K. in the cemetery at that time. While investigating the disturbance, he instructed each member of the Arc of the New Covenant to write his or her name and address on a piece of paper for identification purposes.
Reverend Waldner testified that the cemetery is private. Further, that he saw T.K. at the cemetery on the day in question, and T.K. was without permission to be there. However, Reverend Waldner testified that any Colony member has power to give permission for one to enter onto the grounds of the private cemetery and that it was possible that someone else gave permission for T.K. (whose mother formerly lived at the Colony) to have been there.
T.K. did not testify at the juvenile hearing. At the conclusion of the proceeding, the trial court found that the State had not established beyond a reasonable doubt that T.K. had committed the offense of trespass. It did, nevertheless, determine that T.K. was a child in need of supervision (ChINS). It ordered, based upon the best interests of the child, that T.K. be placed under the supervision of the court services officer for a period of six months. The court further emphasized that T.K. required supervision to prevent him from becoming embroiled, by his parents, in the serious dispute between the members of the Arc of the New Covenant and members of the Hutterian Brethren.[2] The court also *Page 895 
instructed T.K.'s parents to make the child available to the court services officer to prevent his involvement, during his minority, in any ongoing illegal actions or civil disobedience with respect to the Bon Homme Colony.
T.K. has appealed. We affirm.
 ISSUE I
WHETHER THE TRIAL COURT PROPERLY FOUND T.K. TO BE A CHILD IN NEED OF SUPERVISION.
SDCL 26-8-7.1 defines child in need of supervision as ". . . any child who is an habitual truant from school; who has run away from home or is otherwise beyond the control of his parent, guardian, or other custodian; or whose behavior or condition issuch as to endanger his own or others' welfare." (Emphasis added.)
In cases involving ChINS, the burden of proof rests upon the State to prove the allegations beyond a reasonable doubt. See
SDCL 26-8-22.5. Thus, the State must show beyond a reasonable doubt that the child is a truant, runaway or danger to himself or others.
Although this court has never specifically reviewed a ChINS adjudication, in reviewing a dependency and neglect adjudication, we have held that we consider whether the findings of the trial court are clearly erroneous. See People in Interest of M.W.,374 N.W.2d 889 (S.D. 1985). "In determining whether the trial court was clearly erroneous, this court must be left with `a definite and firm conviction that a mistake has been made' after a review of the evidence." Id. at 894 (citations omitted). It is well established that the purpose of any juvenile disposition is to serve the best interests of the child and the public. People inInterest of C.E.B., 263 N.W.2d 874, 876 (S.D. 1978). We will apply the clearly erroneous standard in cases dealing with children in need of supervision.
T.K.'s parents were members of the Arc of the New Covenant. This religious sect was engaged in an ongoing conflict with the Bon Homme Hutterian Brethren Colony in Tabor, South Dakota. Confrontations between the members of these two rival religious factions created a potential for violence which has threatened T.K.'s welfare. As the trial judge noted, it is inappropriate to permit parents to exploit a child by dragging him into a religious dispute involving civil disobedience.
T.K. argues that the statutory definition of a ChINS does not encompass civil disobedience. He reasons that civil disobedience is not behavior which endangers an individual child's welfare. We disagree.
The evidence here supports the trial court's findings of fact and conclusions of law. Sheriff O'Donnell and Reverend Waldner testified that they observed T.K. inside a private cemetery of the Colony. Sheriff O'Donnell testified that T.K. and members of the Arc of the New Covenant were erecting a fence and headstone inside this private cemetery. Reverend Waldner testified that the Colony had previously obtained an injunction to prevent unauthorized visitors on the Colony's property. At a prior hearing, an order was granted prohibiting members of the Arc of the New Covenant from entering the colony's private cemetery without permission. The potential of violence existed. T.K.'s and other persons' welfare was threatened.
 ISSUE II
WHETHER THE TRIAL COURT'S AMENDMENT OF THE FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER T.K. HAD APPEALED THE TRIAL COURT'S ORDER TO THIS COURT WAS PROPER?
The record in this case reflects that the petition alleging T.K. to be a delinquent *Page 896 
child was filed August 8, 1989. The order declaring him to be a child in need of supervision was filed on October 17, 1989. The trial court's findings of fact and conclusions of law were also filed October 17, 1989. T.K. filed notice of appeal on November 7, 1989. In March, 1990, the State made a motion to amend the record to include the circuit court file of a case entitled BonHomme Hutterian Brethren, Inc. v. Sam Wurtz a/k/a Sammy Wurtz,Herman Wurtz, Jim Kleinsasser, Joe Wurtz, Gary Wurtz, ElizabethWurtz, Rose Wurtz, Anna Wurtz, Paula Wainscoat and Ernie Stahl in the settled record on appeal. The trial court later entered an order that the findings of fact and conclusions of law and the judgment and order in Bon Homme Hutterian Brethren be included in the settled record of this case.
T.K. argues that the trial court improperly allowed State to amend the record, asserting that an appeal strips a circuit court of subject matter jurisdiction except as to certain trivial matters, one of which is to correct the record, citing Matter ofD.H., 354 N.W.2d 185 (S.D. 1984); SDCL 15-26A-56.[3] T.K. argues that a record on appeal cannot ordinarily be amended or modified as to matters of substance, citing Wernet v. Jurgensen,241 Iowa 833, 43 N.W.2d 194 (1950). Further, T.K. asserts that the amendment completely modified the substantive record in this case which is impermissible.
SDCL 26-8-61 provides:
 The court may modify or set aside any order or decree made by it, except a decree terminating parental rights.
 No modification of an order or decree shall be made without a hearing when a violation of the terms of probation by a child is alleged; or the effect of modifying or setting aside an order or decree may be to deprive a parent of legal custody of a child or to make any other change in legal custody.
In D.H., supra, this court held that a trial court did not have jurisdiction to conduct further proceedings (in a parental rights termination proceeding) after an order of termination was entered and notice of appeal was filed with this court. We held "[w]hen the termination order was entered and the notice of appeal was filed, jurisdiction shifted to this court." Id. 354 N.W.2d at 192. "The general rule is that appeal from a judgment or order strips the trial court's jurisdiction over the subject matter of the judgment or order, except as to certain trivial matters, and this court then has jurisdiction until determination of the appeal." Id. (citing Matter of Estate of Tollefsrud,275 N.W.2d 412, 417 (Iowa 1979)); Hunter v. Hunter, 44 Wis.2d 618,172 N.W.2d 167 (1969).
Although the trial court did commit error in this case, we find the error to be harmless. To be prejudicial, the error must produce some effect on the final result and affect rights of the party assigning it. See In Interest of A.D., 416 N.W.2d 264, 266 (S.D. 1987). Nothing contained in the record which was added affects the outcome of this case.
The judgment of the trial court is affirmed.
All the Justices concur.
[1] SDCL 22-35-6 provides:
Any person who, knowing that he is not privileged to do so, enters or remains in any place where notice against trespass is given by:
 (1) Actual communication to the actor;
 (2) Posting in a manner reasonably likely to come to the attention of intruders; or
 (3) Fencing or other enclosure which a reasonable person would recognize as being designed to exclude intruders;
is guilty of a Class 2 misdemeanor, but if he defies an order to leave personally communicated to him by the owner of the premises or by any other authorized person, he is guilty of a Class 1 misdemeanor.
[2] The dispute at the Colony came about as the result of certain members of that religious group refusing to obey the group's by-laws and failing to perform the services required, including the upholding of the communal style of living and the fact that they informed the board of directors of the Colony that they no longer wished to live by the tenets nor abide by the by-laws of the community. A permanent injunction and order was issued by the circuit court enjoining those members involved in the dispute from coming upon the Colony without obtaining permission to do so and further enjoining said members from harassing any other members in good standing of the community.
[3] SDCL 15-26A-56 provides:
If anything material to either party is omitted from the record, is misstated therein, or is improper, the parties by stipulation, or the trial court, before the record is transmitted to the Supreme Court, or the Supreme Court, on motion by a party or on its own initiative, may direct the record be corrected and if necessary require a supplemental record be approved and transmitted.
 *Page 117