Julie Ann SWENSON, Plaintiff and Appellant,

v.

Bruce Arlyn SWENSON, Defendant and Appellee.

No. 18596.

Supreme Court of South Dakota.

Argued Sept. 13, 1994.

Decided March 15, 1995.

---

Timothy J. Langley, Sioux Falls, for plaintiff and appellant.

Mary Ann Galland and Gary W. Conklin, Sioux Falls, for defendant and appellee.

AMUNDSON, Justice.

Julie Ann Swenson (Mother) appeals from an order modifying custody of the parties' daughter (Daughter), to Bruce Arlyn Swenson (Father). Mother also appeals the trial court's denial of her motion for a new trial pursuant to SDCL 15-6-59(a). We remand for a factual determination on evidence of post-trial sexual abuse and, therefore, do not reach the new trial or custody issues.

### FACTS/PROCEDURAL HISTORY

Daughter was born to the parties during their marriage on March 9, 1991. On June 17, 1991, judgment and decree of divorce was entered for Mother by default. Mother received sole legal and physical custody of Daughter, subject to Father's right of reasonable visitation. Subsequent to the divorce, Mother began living with Rob Rickenbaugh, and Father cohabited with Diane Worthington (Diane) and her three children.

During the weekend of July 17–19, 1992, Father took Daughter, along with Diane and her children, on a camping trip to Minnesota's Blue Mound State Park. Upon the child's return from the outing, Mother observed changes in Daughter which concerned her. The child had an extremely red and rashy vaginal area and was hysterical when naked, bathed, or in the presence of men. Mother said she had never noticed these symptoms in Daughter before. Mother sought medical attention with the child's physician, Dr. Rabenberg, on Friday, July 24, 1992, who diagnosed the child as a victim of sexual trauma.

On or around March 13, 1993, Mother again discovered Daughter had an irritated vaginal area after picking her up from visitation with Father. The visitation was supervised by other members of Father's family. Mother sought medical attention for the child that evening. Dr. Scott Henry, the attending physician, opined that the child was suffering from chlamydia, a sexually transmitted disease. Mother, her boyfriend Rob Rickenbaugh, and Father were medically examined for chlamydia. Each tested negative.

Numerous hearings were held regarding visitation after the abuse was discovered. On December 7, 1992, a hearing was held on Father's motion to show cause why Mother refused to comply with his visitation rights. Because the circumstances surrounding Daughter's sexual abuse were a mystery, the trial court entered an order allowing Father "supervised" visitation. However, the trial court reserved the right to change its decision based on the outcome of the sexual abuse investigation.

The investigation proved fruitless, and Father thereafter filed a motion for "unsupervised" visitation. With the abuse issue still unresolved, Mother opposed Father's request. A hearing on the matter was held on March 29, 1993. The trial court heard testimony regarding the investigation and concluded that temporary custody of Daughter should be with DSS until the perpetrator could be determined. Daughter was delivered to DSS on March 31, 1993. On or around April 7, 1993, the trial court requested child psychologist, Dr. Cynthia Pilkington, to aid in the investigation of sexual abuse and parental fitness. Dr. Pilkington counseled with Daughter on ten occasions.

On June 4, 1993, the trial court, sua sponte, held that custody was intertwined with both the abuse and visitation issues. A custody hearing was held on June 29, 1993, where the trial court ordered home studies to be performed on both parties. On July 13, 1993, a trial was held concerning Daughter's abuse and all related issues. Evidence at trial indicated that the child could have contracted the disease when she was supervised by members of either Mother's or Father's households. Still, the identity of the perpetrator could not be determined.

Regarding custody, neither Dr. Pilkington nor DSS concluded that one parent was clearly more appropriate than the other. However, when forced to choose between the two, the experts' "gut feelings" favored modifying custody to Father. On July 13, 1993, the trial court so modified, stating in its

findings of fact there existed "clear and convincing evidence that Daughter was sexually abused while in the custody of Mother." However, the court did not set forth specific facts to indicate the basis of this decision. Judgment was entered on August 24, 1993.

On August 6, 1993, Mother discovered symptoms of a third incident of abuse after Daughter returned from visitation with Father. Mother filed a motion for a new trial on grounds of irregularities in the proceedings and new evidence unavailable at trial under SDCL 15–6–59(a)(1), (6).* At the October 4, 1993, hearing on this motion, a time frame was developed when Daughter was unsupervised in Father's household. It became known that she had played alone with the Worthington children, in a basement playroom, for forty-five-minutes prior to discovering the abuse symptoms. The Worthington children had not been tested for the disease at the time of the July 13, 1993, custody hearing. The trial court entered an order on October 20, 1993, denying Mother's motion for a new trial. This started the time running for Mother's appeal.

After denying the motion, the trial court scheduled another hearing to elicit testimony regarding the third incident of abuse. In order to preserve her right to appeal, Mother had to file the appeal before the December 28, 1993, hearing date or else face expiration of the statute of limitations period. SDCL 15–26A–6. Mother appealed. The trial court held it had no jurisdiction to proceed with the hearing. Mother appeals denial of a new trial and change of custody.

## ISSUES

I. WHETHER THE TRIAL COURT DISPLAYED BIAS AGAINST JULIE SWENSON, DEPRIVING HER OF DUE PROCESS, WHEN IT BASED ITS DECISION TO MODIFY CUSTODY, IN PART, ON *EX PARTE* CONTACTS WITH WITNESSES PRIOR TO THE EVIDENTIARY HEARING?

II. DID THE TRIAL COURT ABUSE ITS DISCRETION BY DENYING JULIE SWENSON'S MOTION FOR A NEW TRIAL?

## DECISION

In this case, we have a three-year-old child who, at this tender age, has been subjected to at least two incidents of sexual abuse. Another perplexing aspect of this case is that neither parent, nor the State, was able to identify the perpetrator of the abuse at the time of the custody hearing. The trial court entered findings of fact and conclusions of law on July 29, 1993, stating the first two incidents of abuse occurred while the child was in Mother's care. However, those findings were deficient of any specific facts of support.

On August 6, 1993, after the court modified custody to Father, Daughter was subject to a third incident of abuse. However, the trial court was precluded from considering this last incident because jurisdiction over the matter was lost upon Mother's appeal for a new trial. *Ryken v. Ryken*, 440 N.W.2d 307 (S.D.1989) (trial courts surrender jurisdiction upon filing of appeal to Supreme Court).

It is obvious to this court that the trial court was sincerely concerned about the physical and emotional welfare of this child. It is also clear that the trial court was perplexed over the inability to identify the perpetrator of the sexual abuse. This frustration is evident by the length of the modification process as well as the extensive con-

---

* SDCL 15–6–59(a). A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

(1) Irregularity in the proceedings of the court, jury, or adverse party or any order of the court or abuse of discretion by which either party was prevented from having a fair trial.

(6) Insufficiency of the evidence to justify the verdict or other decision or that it is against law.

sideration given to investigating the abuse. However, the case's procedural outcome denied the trial court a final opportunity to consider all incidents of sexual abuse in its efforts to place this child with the parent who could best protect her from further abuse.

Mother's motion for a new trial was denied on October 4, 1993. Still, perplexed as to the identity of the perpetrator, the trial court adamantly requested another hearing to inquire further into the August incident of abuse. The transcript provides:

THE COURT:

... I would like to set this matter—I want to hear Detective Vanbuskirk's testimony. I want him here. I want to hear the Sioux Falls Police Department's testimony on this as to what new, if anything, has transpired on this ... There is some allegation— ... Defendant's girlfriend's kids [ ]. That's what we need to know. I want to do that as soon as possible. I want to hear whether they have been investigated and what the opinion of the Sioux Falls Police Department is about whether or not those people are the ones who have been responsible for molesting this child because I have to make a decision as to the final placement of this child, at least during the pendency of this litigation.

The hearing was scheduled for December 28, 1993, seven days after Mother's deadline to appeal. In making her decision of whether or not to appeal, Mother faced an untenable position; either appeal and relinquish the trial court's jurisdiction into further investigation of the abuse, or waive her right to appeal. *Ryken*, 440 N.W.2d at 308 (citing *Matter of D.H.*, 354 N.W.2d 185 (S.D.1984)). Mother appealed. As such, the court was precluded from considering the August abuse in conjunction with further modification of custody. *Id.*

■ We believe, as did the trial court, that the consequences surrounding the third incident of abuse should be investigated and considered in determining custody. This incident and the facts and conclusions flowing

therefrom are at the apex of determining what is in Daughter's best interests. In *Williams v. Williams*, 425 N.W.2d 390 (S.D. 1988) this court stated:

[T]rial courts, in their role of parens patriae of the children, must insist that more be done. As stated in *Jasper:* 'It is the trial court's duty to see that the children are protected at every turn ... The parents' personal wishes and desires must yield to what the court in the discharge of its duty regards as the children's best interest.'

*Id.* at 393 (quoting *Jasper v. Jasper*, 351 N.W.2d 114, 117 (S.D.1984)).

■ Trial courts, acting as 'parens patriae,' have the authority and obligation to assure that children do not remain in environments detrimental to their emotional and physical well-being. *Williams*, 425 N.W.2d at 393; SDCL 19–14–26 and –27. Therefore, we find it essential that this case be remanded for the trial court to consider the third incident of abuse so that Daughter can be placed in an environment consistent with her best interests.

The record certainly reflects a trial court attempting to protect a minor child while acting as 'parens patriae' and confronted with unrefuted evidence of sexual abuse. Both the trial court and this court understand the need to protect this child from such abuse and everything must be considered in attempting to get to the root of the problem. Therefore, we remand for a determination consistent with this opinion, and do not reach the other issues.

Remanded.

MILLER, C.J., SABERS and KONENKAMP, JJ., and WUEST, Retired Justice, concur.