Collin JESCHKE, Plaintiff and Appellant,

v.

Gail WOCKENFUSS, f/k/a Gail Jeschke, Defendant and Appellee.

No. 18745.

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1995.

Decided July 19, 1995.

Gary L. Gellhaus, Aberdeen, for plaintiff and appellant.

Carl Haberstick, of Fosheim, Haberstick & Hutchinson, Huron, for defendant and appellee.

AMUNDSON, Justice.

Collin Jeschke (Collin) appeals from the trial court's order modifying child custody to Gail Wockenfuss (Gail). Upon review of the record, we believe the trial court's decision to change custody was consistent with the best interests of the children. We affirm.

## FACTS

Collin and Gail were married on December 27, 1980. Two children, Kayla, age 9, and Dustin, age 7, were born of the marriage. Citing irreconcilable differences, Collin and Gail divorced on August 16, 1990. The parties stipulated that permanent care, custody and control of Kayla and Dustin would be granted to Collin, subject to reasonable visitation in Gail.

Following the divorce, Collin filed a barrage of motions to show cause for Gail's

1. July 22, 1991, Collin filed a motion for order to show cause asserting Gail was delinquent in child support obligations, medical and counseling expenses. He further requested repayment for household items, valuing $335.00, which were allegedly removed from the marital residence without permission. The order to show cause was issued by Judge Dobberpuhl and on September 3, 1991, the parties entered into another stipulation whereby Gail agreed to become current on all financial obligations.

February 20, 1992, Collin petitioned for modification of child support with the Department of Social Services. He claimed a change in circumstances based on health insurance costs, which he agreed to in the divorce property settlement and for which he received credit in child support. However, prior to the hearing, Gail filed a motion for the court to order visitation. A court hearing was scheduled for April 20, 1992, to address both visitation and child support.

March 31, 1992, Collin filed a motion for continuance to postpone the hearing until after calving season. The motion was granted.

April 8, 1992, Collin requested supervised visitation for Gail.

June 4, 1992, Collin again requested the trial court to refer the case to a child support referee. Upon review, the referee increased Gail's child support from $325 per month to $502 per month due to her increased income. Gail objected to

failure to comply with child support payments, counseling costs and other visitation issues.[1] On February 12, 1993, in response to this unending charade, all judges of the Fifth Judicial Circuit disqualified themselves from the case. Judge Jon Erickson of the Third Judicial Circuit was assigned to preside over the proceedings.

Collin contacted Judge Erickson by phone on March 25, 1993, and attempted to discuss his case. Collin next filed an affidavit on May 10, 1993, requesting Judge Erickson be removed from the case, alleging bias against him. Judge James Anderson of the Sixth Circuit was then appointed to preside over the dispute. On May 21, 1994, Collin telephoned Judge Anderson and became irate in attempting to persuade the judge to accept his viewpoint on the dispute. On May 27, 1993, the judge commented on this conversation during a show cause hearing regarding visitation:

I think it's appropriate before I go on to relate something that happened ... On Friday morning I got a call from Mr. Jeschke and he started out rather curiously because as you folks in this area are

the Referee's report and a court hearing was set for September 29, 1992.

June 12, 1992, a temporary restraining order was issued against Collin, prohibiting any "molesting, annoying, or contacting" Gail while she attended her sister's wedding in South Dakota.

June 15, 1992, Collin requested that the court impose supervised visitation for the children. The court granted Gail visitation with son, but not with daughter until the child completed counseling.

September 17, 1992, Collin filed another motion to show cause alleging Gail and her father purposely "torment the children and force them to feel unloved and guilty unless they ask to live with their mother."

September 29, 1992, the court ordered both parties to refrain from making derogatory remarks to the children about the other parent or manipulate them in any way. Collin refused to abide by the order, which resulted in Gail filing another order to show cause on December 8th, 1992. A hearing was set for February 16, 1993; Collin called the judge on the telephone and requested the hearing be rescheduled for February 19, 1993.

On February 2, 1993, Collin motioned the court to accept his attorney's withdrawal from the case. Collin requested the court to postpone the February 19, 1993, hearing in order to retain alternative counsel.

aware, there's a tragedy that happened up in Hosmer, and my court reporter forwarded the call in to me and said that it was the gentleman from Ipswich and put him on. And he started it out saying, "I've got some good news and bad news. The bad news is I was just up in Hosmer," and proceeded to graphically relate what he had observed up there. And I thought that was kind of a strange way to start a conversation when you're talking to the judge that's going to be making the decision.

After that he proceeded to rant and rave and scream and curse and flip in and out of reality and it was a frightening situation. I can see where you people up here are intimidated by this man.

With that in mind and because of the representations of threats that have been made by Mr. Jeschke to other people, and because of his activities here in court which could best be explained or. described as being on the verge of losing control, I am going to enter an order ... [allowing] visitation for Mrs. Wockenfuss this summer.

This May 27, 1993, hearing was held as a result of orders to show cause filed by both parties. Gail testified that Collin referred to her by use of obscenities in front of the children, prevented the children's receipt of her mail and packages, and interfered with professional counseling for the children.

In addition, testimony was presented to the court by various social workers and law enforcement personnel on visitation and Collin's inability to comply with court orders. Gretchen Meyer (Meyer), a Department of Social Services' supervisor of Child Protection, testified on Collin's violent tendencies:

I think that Collin has a tendency to misperceive what happens and when he misperceives what happens it's sometimes in a more radical way than what actually happened. And I think because of that, if he acts on that he could hurt somebody.

Collin has made statements to me that lead me to believe that he could hurt somebody if things didn't go his way.

After hearing this evidence, the court entered a protection order against Collin, prohibiting all oral or written contact with Gail, her new husband, Dean Wockenfuss (Dean), Meyer, and numerous other law enforcement and judicial personnel. In addition, Collin was ordered to comply with a specific visitation schedule. Although the- show cause hearing was initially brought on behalf of Gail, requesting the court to clarify visitation, the court determined that based on the testimony a custody hearing was ·necessary. It ordered psychological testing and homestudies for both parents.

A custody hearing was held on February 16 and 17, 1994. After considering the evidence, the trial court modified custody from Collin to Gail. Collin filed a motion for new ·trial, motion for judge's recusal, and a motion to establish reasonable visitation on April 15, 1994.[2] These motions were denied. Collin filed a Notice of appeal on May 5, 1994.

## STANDARD OF REVIEW

"The trial court exercises broad discretion in awarding custody of children, and its decision will be reversed only upon a clear showing of an abuse of discretion." *Matter of Guardianship of Janke*, 500 N.W.2d 207, 211 (S.D.1993) (citing *Anderson v. Anderson*, 472 N.W.2d 519, 520 (S.D.1991)). There is no abuse of discretion if "a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion." *Hulm v. Hulm*, 484 N.W.2d 303, 305 (S.D. 1992) (citation omitted).

The trial court's decision is based on its ability to judge the credibility of the witnesses. We have previously stated "the credibility of the witnesses and weight to be accorded their testimony is for the trial court and we accept that version of the evidence including any reasonable inferences therefrom, which are favorable to the trial court's determination." *Yarnall v. Yarnall*, 460 N.W.2d 161, 163 (S.D.1990) (citations omit-

---

2. During the course of proceedings on this matter, Collin requested three social workers be removed from the case. Five circuit court judges recused themselves and Collin now alleges unfair treatment by a sixth.

ted). The trial court's findings of fact are given appropriate deference unless they are clearly erroneous. *Janke,* 500 N.W.2d at 211; *Kappenmann v. Kappenmann,* 479 N.W.2d 520, 523 (S.D.1992).

## DECISION

Although Collin set forth ten different issues, they are so intertwined that we will address them as follows: 1) Whether the trial court erred to adjudicate custody when neither party filed a motion to modify the same, and 2) whether the trial court abused its discretion in modifying custody based on the best interests of the children?

### I. Proper Custody Adjudication

■ Since this case began as a visitation dispute, Collin argues the trial court erred when it adjudicated custody because neither party motioned for modification. The court, however, determined a "full-blown" custody hearing was necessary due to Collin's refusal to allow positive contacts between Gail and the children.

We believe the trial court acted within its authority. SDCL 25–4–45 provides:

> In an action for divorce, the court may, *before or after judgment,* give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper, and may *at any time* vacate or *modify* the same. (Emphasis added.)

According to this language, the legislature has granted trial courts the power to determine custody either before or after judgment and "may at any time ... modify" custody so long as modification is in the "best interests of the child." *Id.; see Kolb v. Kolb,* 324 N.W.2d 279 (S.D.1982).

This court in *Swenson v. Swenson,* 529 N.W.2d 901 (S.D.1995) further emphasized a trial court as parens patriae of the children "must insist that more be done" when the children's best interests are at stake. *Id.* at 904 (quoting *Williams v. Williams,* 425 N.W.2d 390, 393 (S.D.1988)). "It is the trial court's duty to see that the children are protected at every turn ... The parents' personal wishes and desires must yield to

what the court, in the discharge of its duty, regards as the children's best interest." *Swenson,* 529 N.W.2d at 904 (citation omitted).

This record reflects an acrimonious relationship between two divorced parents, resulting in the constant filing of orders to show cause as shown above. The evidence shows parents who both have faults. After reviewing the voluminous record of the numerous disputes between the parties and listening to live testimony on the latest motion, the trial court made a determination that this post-decree conduct on the part of the parents was not in the best interests of the children. The court ordered the parties to undergo psychological evaluation and home-studies. It was obvious to the trial court that the children were innocent victims being impacted by the hostility between two divorced parents.

Given the record, we do not find the trial court abused its discretion in ordering the custody hearing. Such action was within its authority, via statute and case law, to ensure these children's best interests remained the primary focus of this protracted litigation.

### II. Modification Consistent with Best Interests of Children

■ Since the parties originally stipulated to custody in the divorce decree, the court was not required to find "substantial change in circumstances" before modifying that prior agreement. *Hulm v. Hulm,* 484 N.W.2d 303, 305 (S.D.1992). Custody was to be resolved solely in the best interests of the children. SDCL 25–5–7.1; SDCL 30–27–19 (repealed 1993 S.D.Sess.L. ch. 213, § 172; reenacted in relevant part, 1994 S.D.Sess.L. ch. 192, and codified at SDCL 25–4–45); *McKinnie v. McKinnie,* 472 N.W.2d 243 (S.D.1991) (citing *Nauman v. Nauman,* 445 N.W.2d 38, 39 (S.D.1989)). "In determining the best interest of the children, the court must be guided by what appears from all the facts and circumstances to be in the best interest of the children's temporal, mental and moral welfare." *Yarnall,* 460 N.W.2d at 163–64. In *Yarnall* this court further stated: "The children's welfare must be considered over the

legal rights and claims of the parents." *Id.* at 164.

This court in *Nauman*, 445 N.W.2d at 39, addressed a virtually identical fact scenario as the one at bar. The trial court changed custody from the Mother because she refused to comply with visitation and fostered alienation between the children and their father. A psychologist, who examined the Nauman children, testified that their mental health would suffer unless they had consistent ongoing contact with both parents. The *Nauman* court refused to find an abuse of discretion.

■ Similarly, in *Janke,* this court affirmed a change of custody where the trial court found the father "demanding, critical, and has constantly attempted to drive a wedge between the [Mother] and the children[.]" 500 N.W.2d at 211. This court found such emotionally manipulative behavior on the part of a parent toward his children "unacceptable and not in the best interest of the children[.]" *Id.* at 211. In the case at bar, psychologist testimony indicated the children's emotional health requires an end to Collin's outward hostilities toward Gail.[3]

Reviewing the witnesses' testimony, Collin has chartered a course of action to exclude Gail from the children's lives. The trial court found that he "willfully engaged in a continuous and intensive course of conduct designed to alienate the children's affections for their mother." He refused to let the children talk to Gail on the phone and repeatedly called her vulgar names in front of them. He obstructed Gail's letters and packages from reaching the children. He has threatened violence against Gail and other individuals in front of the children. He has consistently thwarted visitation between them.

The trial court further found that such alienation has "seriously harmed the emotional well-being and normal development of these children." This is evidenced by the children's reactions to Gail. For example, Kayla, age 8, threatened suicide if she had to stay with her mother. The trial court stated there was no explanation for the way the children react with regard to their mother, other than being coached by Collin.

Collin has also elected to continue intimate relations with various women while the children are present in the house, albeit out-of-sight. He believes the children need "to grow up fast" and have only allowed them to perceive the world and reality through his ideas and perceptions. Collin's perspective, when directed toward Gail, is controlled by hatred.[4] He has gone to the extent of calling Gail's new husband a "molester" in front of

---

3. Both Meyer and Dr. Mark Hedges, an Aberdeen psychologist, testified that the Jeschke children would suffer emotional damage if they were prevented from fostering a positive relationship with Gail. Dr. Hedges stated:

Q. And if [child] was reassured she'd never have to see her mother again, you're saying that she'd be a normal emotionally secure person?

A. No, ... I think that both of the children are going to end up with very significant [] damage in the long run if the parents do not get together and provide a stable working relationship[.]

Meyer agreed:

A. Ideally these children need to have the message that it's okay for them to be happy; that they have two parents that love them very much in the best way that they can and that these two parents are going to work really hard to make sure that they can [] develop into healthy adults.

4. Meyer *testified to the children's emotional* well-being.

Q. Based upon your experience and training and your observations of the children, do you feel that there's been an alienation of the children's affection for their mother?

A. Yes, I do.

Q. Can you tell me what programmed alienation is?

A. *Programmed alienation would almost be* as though the children were involved in a cult. It's a constant barrage of messages, you know, without other messages [] that gives them a choice to make a decision on their own.

Q. If Gail is denied custody, and I guess keeping in mind this alienation, do you feel the children can establish a healthy relationship with their mother through visitation?

A. That's highly unlikely ... [the children] are seeing the world through Collin, [] and Collin is defining this world for them. And you know, I've experienced Collin's misinterpretation of the world because he misinterprets the world ... [The children] are going to be very confused when the other messages *they get aren't in sync with the ones they're* getting from Collin.

the children, although allegations of such abuse were wholly unsubstantiated.

Meyer further testified that Collin could be dangerous. When asked for her reasons, she replied: "Because you have a combination of a man who's paranoid ... [and] who deals with his problems from anger. He has a misperception of what reality is and he has a need to control. You put those four elements in a can and you've got an explosion.[5]" Numerous other social workers, law enforcement and judicial personnel have felt threatened and intimidated by Collin.

It is clear upon review of the record that the trial court modified custody in the best interests of these children. The record clearly supports the trial court's findings of fact. *Janke,* 500 N.W.2d at 211. Collin focuses on all parts of the record which favor his position in requesting a reversal. However, it is our duty to review the record as a whole to see whether or not the evidence supports the trial court's decision to modify. *Friendshuh v. Headlough,* 504 N.W.2d 104,

105 (S.D.1993); *Hanhart v. Hanhart,* 501 N.W.2d 776, 778 (S.D.1993); *Henle v. Larson,* 466 N.W.2d 846, 849 (S.D.1991). As shown above, there is abundant evidence to support the trial court's decision. Therefore, we cannot say the trial court abused its discretion in changing custody from Collin to Gail.

Affirmed.

MILLER, C.J., and SABERS and KONENKAMP, JJ., concur.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

---

**5.** Meyer further testified at the February 16, 1994 custody trial that DSS officials removed her from the case "because Collin had been so threatening and intimidating to me and to my family that for my own protection [DSS supervisors] asked me to send the file to Pierre and withd[raw][.]"